## COMMONWEALTH *vs.* WILLIAM H. HALL.

An allegation in an indictment that the defendant had in his possession " a counterfeit bank bill," of a certain tenor, " purporting to be issued by the president, directors and company of" " an incorporated banking company" duly established in another state, is sustained by proof that he had in his possession a counterfeit note of that tenor, purporting to be issued by a national banking association organized there under the U. S. St. of 1864, *c.* 106.

There is no constitutional objection to a statute which enacts that "no variance between any matter, in writing or in print, produced in evidence on the trial of any criminal cause, and the recital or setting forth thereof in the complaint, indictment or other criminal process whereon trial is had, shall be deemed material, provided that the identity of the instrument is evident and the purport thereof is sufficiently described to prevent all prejudice to the defendant," — St. 1864, *c.* 250, § 1.

An indictment alleged that the defendant had in his possession with intent to utter, knowing the same to be false, " a counterfeit bank bill, of the tenor following, to wit," and then set forth a bill purporting to be issued by a national bank, promising to pay a certain sum to the bearer on demand, and dated, and signed by the president and cashier; and also set forth, as if a part of the instrument, a certificate purporting to be signed by the register of the treasury and by " P. E. Spinner, Treasurer of the United States," that " this note is secured by bonds of the United States deposited with the United States Treasurer at Washington." At the trial, the paper offered in proof of this allegation was of that tenor except that the certificate thereon bore the signature of " F. E. Spinner, Treasurer of the

Commonwealth *v.* Hall.

United States;" and it appeared in evidence that the name of the treasurer of the United States was Francis E. Spinner. *Held*, that under the St. of 1864, *c.* 250, § 1, this variance was immaterial.

INDICTMENT charging the defendant with having in his possession, on March 21, 1867, with intent to utter, knowing the same to be false, " eleven counterfeit bank bills purporting to be issued by the president, directors and company of the People's National Bank of Jackson, then being an incorporated banking company duly established in the State of Michigan, and each one of the said eleven similar, false, forged, and counterfeit bank bills being of the tenor following, to wit: ' D. 2897. National Currency. This note is secured by bonds of the United States, deposited with the United States' Treasurer at Washington. S. B. Colby, Register of the Treasury. P. E. Spinner, Treasurer of the United States. The People's National Bank of Jackson will pay the bearer on demand five dollars. Jackson, Michigan, Oct. 2nd, 1865. J. W. Root, Cashier. H. A. Hayden, President.' "

Trial in the superior court, before *Morton*, J., who signed the following bill of exceptions:

" Before the jury were sworn, the defendant moved to quash the indictment because it set forth no offence under the statute, calling the judge's attention to the allegation that the bank bills purported to be issued by the " president, directors and company of " an incorporated banking company, each bank bill being of a certain tenor, set forth in the indictment, which tenor described a note issued by an association formed under a general banking act of the United States. But the judge refused to quash the indictment, to which refusal the defendant alleged exceptions.

" Upon the trial, and in support of the allegation contained in the indictment, the government offered in proof a paper of the same tenor as therein described, except that the indictment described the treasurer of the United States as P. E. Spinner. The paper offered in proof bore the signature of F. E. Spinner as treasurer of the United States; the true name of the said treasurer being Francis E. Spinner. The defendant contended

that this was a fatal variance, and requested the judge so to rule. But the judge declined to rule as requested , and the defendant alleged exceptions."

*F. F. Heard & B. F. Russell*, for the defendant. 1. The indictment must follow the description given in the statute. *Rex* v. *Craven*, Russ. & Ry. 14. *Rex* v. *Chard*, Ib. 488. U. S. St. 1864, *c.* 106.

2, At common law the variance is fatal. *The King* v. *Shakespeare*, 10 East, 83. *Bingham* v. *Dickie*, 5 Taunt. 814. *Rex* v. *Tannet*, Russ. & Ry. 351. *Commonwealth* v. *Shearman*, 11 Cush. 546. *Commonwealth* v. *Gillespie*, 7 S. & R. 469.

3. It is not avoided by the St. of 1864, *c.* 250, § 1. That statute is unconstitutional. The provision of the twelfth article of the Declaration of Rights, that no person " shall be held to answer for any crimes or offence, until the same is fully and plainly, substantially and formally described to him," is but a declaration and affirmation of the ancient rule of the common law, and in no respect changes that rule, that no one shall be held to answer to an indictment unless the crime with which it is intended to charge him is set forth with precision and fulness *Commonwealth* v. *Davis*, 11 Pick. 432. *Commonwealth* v. *Phillips*, 16 Pick. 213. *Commonwealth* v. *Brown*, 13 Met. 368. *Commonwealth* v. *Blood*, 4 Gray, 32, 33.

*C. Allen*, Attorney General, for the Commonwealth. 1. In the U. S. St. of 1864, *c.* 106, §§ 7, 30, 42, national banking associations are called " banks ; " and in § 58 their bills are called " bank bills."

2. The Gen. Sts. *c.* 162, §§ 4, 5, against making or having in possession counterfeit bank bills, include national banks established in other states. *Commonwealth* v. *Tenney, ante,* 50.

3. The certificate that the bill was secured by bonds deposited in Washington was no part of the bill. *Edwards* v. *Marcy*, 2 Allen, 491. It was not signed by an officer of the bank, and was entirely collateral to the promise. Therefore it was unnecessary to undertake to set it out in the indictment. 1 Stark, Crim. Pl. 103. *Rex* v. *Testick*, 1 East, 181, note. *State* v. *Ballard*, 2 Murphey, 186. *Rex* v. *Dunn*, 1 Leach, (4th ed ) 58, note.

*Commonwealth* v. *Taylor*, 5 Cush. 605, *Commonwealth* v. *Adams*, 7 Met. 50. *Commonwealth* v. *Bailey*, 1 Mass. 62. *Commonwealth* v. *Stevens*, Ib. 203.

4. The certificate itself being immaterial and unnecessary to be copied, the error in copying is also immaterial. A variance can only be alleged in respect to some material portion of the instrument. And see the St. of 1864, *c.* 250, § 1.

FOSTER, J. A national banking association is an incorporated banking company established within the United States, and within the particular state in which it is located and does business ; and its bills are bank-bills. This indictment therefore charges an offence against the Gen. Sts. *c.* 162, § 5. *Commonwealth* v. *Tenney*, *ante*, 50.

The variance between the bills described in the indictment and those offered in evidence at the trial is rendered immaterial by the provisions of the St. of 1864, *c.* 250, § 1; for we cannot doubt that the identity of the bills offered in evidence with the description thereof in the indictment was evident, and that their purport was sufficiently described to prevent all prejudice to the defendant. The constitutionality of this act in other particulars has been already affirmed. *Commonwealth* v. *Walton*, 11 Allen, 238. And we fully assent to the statement of Shaw, C. J., in *Commonwealth* v. *Holley*, 3 Gray, 458, that " the object of the Declaration of Rights was to secure substantial privileges and benefits to parties criminally charged; not to require particular forms except where they are necessary to the purposes of justice and fair dealing towards persons accused, so as to ensure a full and fair trial." In that case, under the St. of 1852, *c.* 322, § 18, the amendment of an indictment by the prosecuting officer at the trial, in its allegation of a former conviction, the effect of which was to increase the penalty, was permitted by leave of court, and held to be no violation of the twelfth article of the Declaration of Rights. We entertain no doubt of the constitutionality of this section, which promotes the ends of justice by taking away a purely technical objection ; while it leaves the defendant fully and fairly informed of the nature of the charge against him, and affords him ample opportunity for interposing

every meritorious defence.   Technical and formal objections of this nature are not constitutional rights.

*Exceptions overruled.*