COMMONWEALTH *vs.* ALBERT MORGAN & another.

On the trial of an indictment for a libel, evidence is admissible to show that ,he words " State Cop." in the libellous writing mean a deputy of the constable of the Commonwealth.

Ɓ. a criminal prosecution for a libel, where the defendant does not, under the Gen. Sts. *c.* 172, § 11, justify the libel as true, he cannot introduce evidence that the person libelled treated part of the libellous matter as a joke originated by himself.

The publisher of a newspaper in which a libel appears is *primâ facie* presumed to have published the libel; the presumption is not rebutted by evidence that he never saw the libel and was not aware of its publication until it was pointed out to him, and that an apology and retraction were afterwards published in the same newspaper; and the exclusion of such evidence at his trial on an indictment for the libel gives him no ground of exception.

If the defendant in an indictment for a libel offers himself as a witness on the trial, he cannot refuse to answer, on cross-examination, whether he was the publisher of the newspaper in which the libel appeared, although he was examined in chief only as to his knowledge of the publication of the libel.

On the trial of an indictment for publishing a libel in a newspaper printed and published by two persons, proof that the newspaper was printed and published by only one of them is not a material variance, since the St. of 1864, *c.* 250, § 1, if the identity of the newspaper is evident and it is described so as to prevent any prejudice to the defendant.

At the trial of an indictment for publishing a libel in a newspaper at a certain time and place, the production of a copy of the newspaper containing the libel, bearing date of a day within the statute of limitations, together with evidence that it was purchased at a newspaper-stand in said place, is sufficient evidence of the time and place of publication.

A verdict on an indictment for composing, writing, printing and publishing a libel, that the defendant is " guilty of publishing as alleged in the indictment, and not guilty as to the residue," is equivalent to a general verdict of guilty.

INDICTMENT, in Suffolk, against Albert Morgan and James N. Smart, alleging that they " did unlawfully and maliciously compose, write, print and publish, and cause to be composed, written, printed and published in a certain newspaper, printed and published at Boston in said county of Suffolk by said Morgan and Smart, to wit, the Saturday Evening Express," two libels against Chauncey C. Dean, the first at Boston on September 11, 1870, and the second at Boston on September 18, 1870. The indictment set forth the libels, which charged " State Cop. Dean " with having acted, while a soldier in the army, in a manner to indicate cowardice, and with having been drunk while on duty as a deputy of the constable of the Commonwealth. The district attorney entered a *nolle prosequi* as to Smart. In the superior court, before the jury were empanelled, the other defendant

moved to quash the indictment on grounds that are now immaterial; and the motion was overruled.

At the trial at October term 1870, before *Devens*, J., Dean being called as a witness, was asked what was meant by " State Cop." The defendant objected; whereupon the district attorney stated " that it was a slang word, not to be found in the ordinary dictionaries of the language." The judge overruled the objection, and the witness answered that " State Cop." meant " a deputy state constable of the Commonwealth."

The defendant offered the testimony of several witnesses, that before and since the alleged publication Dean had frequently spoken of those matters concerning his conduct in the army which were charged in the libel, " and treated and considered it a joke; and that in fact the rumor was originated by himself in conversations had with the witnesses and others; " but the judge excluded the evidence.

The defendant also offered evidence tending to show that he never saw the libel of September 18, or was aware of its publication, until it was pointed out to him by a third person, and that an apology for and retraction of the statements therein contained was subsequently published in the Saturday Evening Express; but the judge excluded the evidence as immaterial.

A witness testified that the defendant told him, " about a year ago," that he was then the publisher of the Saturday Evening Express; and Smart testified that " seven or eight years ago " the defendant came to him and asked him what he would do the press-work of the Saturday Evening Express for; that since that time he had done the press-work for that paper; that he had no interest in the paper; that he made out his bills to the Saturday Evening Express; that sometimes the defendant paid him, and sometimes a boy paid him; and that he did not know who was the publisher of the paper when the libels appeared. The defendant was then called by his counsel as a witness, for the purpose of showing that he had never seen the libels until they were pointed out to him, and was asked on cross-examination whether he was not the publisher of the Saturday Evening Express. He objected to answering, on the ground that his answer might crim-

inate him; but the judge overruled the objection, and he answered that he was the sole publisher, and that the paper was not published by himself and Smart.

The defendant asked for a ruling that, if the paper was printed and published by himself only, there was a variance but the judge declined so to rule.

Dean testified that he bought copies of the Saturday Evening Express containing the libels at newspaper-stands in Boston, and these copies were put in evidence. One of them was dated on the first page, Saturday, September 10, and the other Saturday, September 17; but on the third page of each were two columns headed " Sunday Morning, September 11," and " Sunday Morning, September 18," respectively, and it was in these two columns that the libels were printed.

The defendant requested a ruling that this evidence as to publication would not support the indictment; but the judge declined so to rule, and ruled " that it was not necessary to prove the day when published, provided the publication was within the statute of limitations, and the proof that the papers were purchased at the time testified to by Dean was sufficient evidence."

The jury returned a verdict of " Guilty as to publishing, but not guilty as to the rest; " and the clerk affirmed and recorded the verdict in the following form: " Guilty of publishing as alleged in the indictment, and not guilty as to the residue." After verdict the defendant moved in arrest of judgment, on the ground " that he had not been convicted of any offence at law," but the motion was overruled; and he alleged exceptions.

*J. W. Mahan,* for the defendant.

*C. Allen,* Attorney General, for the Commonwealth.

COLT, J. 1. The questions raised upon the motion to quash are not insisted upon in the defendant's argument, and need no consideration.

2. The Commonwealth must prove the application of the words used to the person against whom the libel is directed; and the meaning of the defendant in the language used, when it is ambiguous or consists of expressions not in common use, but having a known meaning among certain persons, may be explained by

those who know their application. 2 Phil. Ev. (4th Am. ed.) 718, 734 note.

3. The defendant was properly not permitted to show that the person libelled, in conversation with the witnesses, treated some of the matter charged in the libel as a joke originated by himself. In a criminal prosecution for libel, it is not material to inquire whether the person attacked has actually suffered from injured feelings. The public scandal and the injury to public morals remain, however lightly he may have treated it. Nor was it material to show that he originated the rumor. The defendant did not offer to give in evidence the truth of the charge in the libel, under the Gen. Sts. c. 172, § 11; and this evidence could only have been competent under such an offer, as in the nature of an admission. And besides, this offer at best only reached a small portion of the libellous matter published.

4. The defendant then offered to prove that he had never seen the alleged libel, and was not aware of its publication till it was pointed out to him by a third party; and that an apology and retraction was subsequently published in the same newspaper.

When a libel is sold in a bookseller's shop, by a servant of the bookseller, in the ordinary course of his employment; or is published in a newspaper; the fact alone is sufficient evidence to charge the bookseller, or the proprietor of the newspaper, with the guilt of its publication. This evidence, by the earlier English decisions, was held not to be conclusive, but the defendant was permitted to show, in exculpation, that he was not privy, nor assenting to, nor encouraging, the publication. See 1 Lead. Crim. Cas. 145; notes to *Rex* v. *Almon*, 5 Burr. 2686. Afterwards, such evidence was held conclusive, upon the ground that it was necessary to prevent the escape of the real offender behind an irresponsible party. *Rex* v. *Gutch*, Mood. & Malk. 433. *Rex* v. *Walter*, 3 Esp. 21. In both these cases, the defendants offered to show that they were perfectly innocent of any share in the criminal publication, and that, although proprietors of the papers, they were living at a distance from London, the place of publication, taking no share in the actual publication, and in one case confined by illness when the paper complained of appeared. It

was ruled by Lord Kenyon and Lord Tenterden to be no defence. But now, by a recent English statute, a defendant is permitted to prove that such publication was made without his authority, consent or knowledge, and did not arise from want of due care or caution on his part. St. 6 & 7 Vict. c. 96.

The rule thus made positive law is in strict accordance with those just principles which ought to limit criminal liability for the acts of another, and which have been recognized in the decisions of this court. Criminal responsibility on the part of the principal, for the act of his agent or servant in the course of his employment, implies some degree of moral guilt or delinquency, manifested either by direct participation in or assent to the act, or by want of proper care and oversight, or other negligence in reference to the business which he has thus intrusted to another. The rule of civil liability is broader, and the principal must respond in damages for the default or tortious act of the agent or servant in his employment, although he had no knowledge of it, or had actually forbidden it in advance and exercised due care to prevent it.

In *Commonwealth* v. *Nichols*, 10 Met. 259, it was held that a shopkeeper is criminally liable for an unlawful sale of spirituous liquor in his shop, made with his assent by a servant or agent employed in his business. But such sale is only *primâ facie* evidence of assent. And it was said that " if a sale of liquor is made by the servant without the knowledge of the master, and really in opposition to his will, and in no way participated in, approved or countenanced by him, and this is clearly shown by the master, he ought to be acquitted." It is to be remarked with reference to this case, that the question whether the sale was really against the defendant's will is for the jury upon all the evidence, and that the facts that the profits of the business were received by the defendant, and that there was an absence of proper precautions to prevent the illegal traffic, would justify an inference of his approval.

In *The King* v. *Dixon*, 3 M. & S. 11, the defendant was convicted of selling unwholesome bread, upon proof that his foreman had by mistake put too much alum in it. There was no evidence

that the master knew of ·the quantity used in this instance. But Bayley, J., said : "If a person employed a servant to use alum, or any other ingredient, the unrestricted use of which was noxious, and did not restrain him in the use of it, such person would be answerable if the servant used it to excess, because he did not apply the proper precaution against its misuse." `

It is the duty of the proprietor of a public paper, which may be used for the publication of improper communications, to use reasonable caution in the conduct of his business, that no libels be published. He is civilly responsible for the wrong, to the extent indicated ; and he is criminally liable, unless the unlawful publication was made under such circumstances as to negative any presumption of privity, or connivance, or want of ordinary precaution on his part to prevent it. 3 Greenl. Ev. §§ 170, 178.

We are of opinion that the offer of the defendant did not go far enough, in view of the law thus stated, to rebut the presumption of guilt arising from the publication of this libel. The facts offered may be true, and yet entirely consistent with the fact that the conduct of the newspaper was under his actual direction and charge, at a time when he was neither absent from home nor confined by sickness, and when his want of knowledge would necessarily imply criminal neglect to exercise proper care and supervision over the subordinates in his employ. It is consistent also with such information in this instance, in regard to the proposed libellous attack, as should have put him on inquiry ; and with the fact that the general management of the paper was of such a character as to justify the inference that the defendant approved of or connived at publications of this description, and had given his general assent to them. Under such circumstances, the defendant ought not to be permitted to escape on the plea that he had not seen the particular article and did not know of its publication.

As to the evidence offered of a subsequent apology and retraction, the answer is that it is only a matter in mitigation of sentence. The crime is not purged by it.

5. The evidence to show that the defendant was the publisher was sufficient without the testimony of the defendant, who offered

himself as a witness and was sworn. His testimony on cross-examination was admissible, although it tended to criminate himself. By taking the stand as a witness, he waived his constitutional privilege of refusing to furnish evidence against himself, and subjected himself to be treated as a witness. St. 1866, *c.* 260. *Commonwealth* v. *Mullen,* 97 Mass. 545. *Commonwealth* v. *Bonner,* Ib. 587. Under our rule, the cross-examination of a witness is not confined to the matters inquired of in chief. *Moody* v. *Rowell,* 17 Pick. 490, 498.

6. If the allegation in the indictment, that the libel was published in a newspaper printed and published by the two persons named, is to be regarded as a matter of essential description, and as equivalent in common acceptation to an allegation that the two were proprietors of the paper, then, although a purely redundant allegation, it would formerly have been necessary to prove it as alleged. *Commonwealth* v. *Varney,* 10 Cush. 402. Now by the St. of 1864, *c.* 250, § 1, no variance between the writing and the paper produced in evidence is material, if the identity of the instrument is evident, and it is described so as to prevent all prejudice to the defendant. *Commonwealth* v. *Hall,* 97 Mass. 570.

7. The other rulings at the trial do not appear to be erroneous.

8. The verdict of the jury was equivalent, as matter of law, to a general verdict of guilty. It was the same as a finding that the defendant was guilty of the publication of the libel, as charged in the indictment. And although the charge is that the defendant composed, wrote, printed and published the alleged libel, yet it is well settled that it is supported by proof of publication alone. 3 Greenl. Ev. § 169. The motion in arrest of judgment was rightly overruled. *Exceptions overruled.*