STATE *vs.* HORACE WENTWORTH, appellant.

York, 1875.—October 6, 1875.

*Intoxicating liquors. Evidence. Trial. Witness. Complaint.*

A sale of spirituous liquors by a servant in the shop of his master is *prima facie* a sale by the master.

Proof of sales by the master is admissible evidence as tending to show that the sale of the servant was with the assent and by the authority of the master.

When instructions were given to a servant not to sell, it is for the jury to determine, whether they were given in good faith, or were colorably given.

A defendant in a criminal prosecution who becomes a witness, "at his own request," waives the constitutional privilege of exemption from furnishing or giving evidence against himself.

The privilege of exemption from answering questions, which being answered truly would disclose the guilt of the witness, is the privilege of the witness alone.

It would seem that the objection to answering is one which the witness alone, and not his counsel, can interpose.

When the master not merely denied the authority of his servant to sell spirituous and intoxicating liquors, but testified that he forbade his selling, it was *held* competent on cross-examination to inquire of him if he had spirituous and intoxicating liquors in his shop, and if he had sold such liquors.

Acts of a party, who is a witness at his own request, may be inquired about on cross-examination, though tending to prove his guilt, for the purpose of negativing the truth of his statements made on his direct examination.

The cases *Tilson* v. *Bowley*, 8 Maine, 163, and *Low* v. *Mitchell*, 18 Maine, 372, questioned so far as they relate to cross-examination.

Technical accuracy is not required in setting forth the record of a former conviction under R. S., c. 27, § 55, relating to spirituous liquors and prohibiting their sale.

ON MOTION AND EXCEPTIONS.

Complaint to the municipal court of Biddeford, for selling one pint of intoxicating liquors to Charles T. Goodwin, November 6, 1874, alleging "that the said Horace Wentworth" had "once before been convicted of a single sale under section twenty-eight of chapter twenty-seven of the Revised Statutes of the state of Maine, in the county of York, to wit: on the twelfth day of October, A. D. 1874, in the municipal court of the city of Biddeford."

At the trial at *nisi prius* to sustain the allegation of sale the government offered evidence of sale made by one Libby, a clerk of the defendant to the witness Goodwin, about November 6, 1874. The government officer then inquired of the witness whether he had purchased any of Wentworth prior to this time.

The defendant's counsel seasonably objected, and urged among other reasons, that the government having selected the act upon which they claimed a conviction, and that act being an alleged sale by Libby to Goodwin, they could not then offer proofs of another act at a different time done by the defendant in person and claim a conviction therefor; that the defendant could not in this complaint be then called upon to answer to any other act than that of a sale by Libby to Goodwin; and that it was immaterial how many times Goodwin may have purchased of Wentworth in person before the sale charged in the complaint; but the question and the affirmative answer thereto were admitted to show the assent of the defendant.

The defendant being called as a witness in his own behalf, was interrogated by the government counsel concerning sales of intoxicating liquors made by himself personally. His counsel objected to the inquiries for the reasons (among others) urged against the inquiries made of Goodwin, and claimed that he was not obliged by law to answer concerning sales made by himself prior to the sale charged in the complaint; that the waiver of his privilege to give no evidence tending to criminate himself applied only to the charge under consideration and set forth in the complaint. The presiding judge remarked that the full court had decided otherwise and ruled that the defendant must answer any question put to him by the county attorney in regard to any sales of intoxicating liquors in that store by himself to any person within thirty days. To these rulings the defendant excepted.

To sustain the allegation of a former conviction the government offered the record of the municipal court of the city of Biddeford, attested by Abel H. Jelleson, which consisted of the complaint, warrant, officer's return and the following:

"STATE OF MAINE, YORK, ss.—At a municipal court of the city of Biddeford, in the county of York, holden at the municipal

court room, on the twelfth day of October, A. D. 1874, Edmund Warren of Alfred, in said county of York, on the twelfth day of October, A. D. 1874, in behalf of said state, on oath complained to Abel H. Jelleson, judge of said court, that Horace Wentworth of said Biddeford, on the twelfth day of October, A. D. 1874, at said Biddeford, in said county, without any lawful authority, license or permission therefor, did then and there sell a quantity of intoxicating liquors, to wit: one pint of intoxicating liquor to one Bridget Lee, against the peace of the state and contrary to the form of the statutes in such case made and provided.

And now said Horace Wentworth is brought into court upon a warrant issued by the judge of said court, on complaint aforesaid, to be tried thereon; and said complaint is read to him, and he pleads and says he is guilty of the offense charged against him.

It is therefore ordered by the court that said Horace Wentworth forfeit and pay a fine of thirty dollars, to and for the use of said state, and costs of prosecution, taxed at five dollars and thirteen cents, and stand committed till sentence be performed."

To the admission of this the defendant's counsel objected, and suggested among other things, that the count or allegation was so informal and insufficient in law, that no evidence could legitimately be introduced under it; that it does not allege a prior conviction of the violation of any particular provision of chapter 27, of Revised Statutes of the state of Maine; that it does not allege a prior conviction of a sale of intoxicating liquors; that the record does not purport to be a finding or an adjudication of an illegal sale of intoxicating liquors, or of any offense, and does not show a conviction under section twenty-eight of chapter 27 of the Revised Statutes of the state of Maine.

The presiding judge admitted the record, subject to the defendant's objections, and ruled that it was sufficient in law to sustain the charge of prior conviction as alleged in the complaint.

The defendant also duly filed a motion in arrest of judgment, which the court overruled.

Concerning the evidence of sales made by the defendant, by his own hand, the presiding judge in his charge remarked to the jury:

"Wentworth himself has been on the stand. You remember what his testimony was, whether he testified frankly, and answered the questions candidly and consistently. Is there any testimony in this case that he had been guilty of selling intoxicating liquors within thirty days of the time it is alleged he sold this to Goodwin? If there is, that is not any evidence directly sustaining this prosecution, except so far as I shall now state to you. He had a clerk in his store, one or more. The proof is, so far as there is any proof by the government, that he did not purchase of Wentworth himself, but he purchased of the clerk. If Wentworth has been proved to you to be guilty of selling intoxicating liquors contrary to law in that drug store within thirty days of that time it may have more or less tendency, as you shall judge, to show that Wentworth permitted liquors to be sold there and to show whether or not, if he did permit liquors to be sold there to certain parties, he authorized or winked at the sale of them by his clerk. He testified, as I understood him, unqualifiedly that he had always instructed his clerks not to sell.

You can see what that testimony is, and weigh it. Perhaps a witness or a party situated as the doctor is, might say to his clerk, 'now, Libby, from this time you enter my store, understand that you must not sell any intoxicating liquors here. I have it for prescriptions, and it is necessary in order to preserve certain medicine from souring, that they should be preserved in alcoholic preparations, and understand, although here is whiskey and rum, you must not sell any; if there is going to be any sale of that, I will attend to that.' If such a sincere remark was made to his clerks, you can see that it would not be proper to convict the doctor upon a sale contrary to, and against his own express directions. If he gave any such directions to his clerk with a wink or anything of that kind, he was a dishonest man; he might say, 'Libby, you must not sell any of this,' you understand he might convey the idea to Libby, he might sell, but he must be very careful to whom he sold. But then that is imaginary. I do not pretend that there is anything of the kind in the case."

To the aforesaid rulings, directions, and course of remarks by the presiding judge, the defendant, the verdict being against him, excepted.

*R. P. Tapley*, for the defendant, contended that the testimony as to the sales by the defendant personally at other times, had no tendency to show his assent to the sale of November 6, by his clerk Libby; to the point that evidence offered with a view of showing that the defendant had committed other similar offenses, in order to lead to an inference that he was more likely to have committed this, would be inadmissible, he cited *Com.* v. *Miller*, 3 Cush., 243; to the point that a sale by a clerk with a knowledge of the fact by the principal was not sufficient evidence of agency, the counsel cited *Com.* v. *Putnam*, 4 Gray, 16; in the case at bar, he said the instruction was, substantially, that evidence that Wentworth had previously sold was sufficient evidence of Libby's agency to sell, and contended that the authority of the clerk conferred by his clerkship, is, to do acts according to law, and not in violation of law, and in order to make a party criminally responsible for the act of another, as his own act, it should clearly appear he authorized and directed the act; the same degree of proof is required, of the authority to do the act, that is required to show the act has been done, such as removes all reasonable doubt concerning its commission; the criminal conduct of the principal is not the act of the clerk, it is the procuring the act to be done by the hand of the clerk; though ratification is equal to previous authorization, so far as civil liability is concerned, it does not impose a criminal liability; the act when done must be the act of the principal to constitute it an offense as to him; the offense is committed and perfected when the sale is made.

The counsel contended there was nothing in the case to found the authority of Libby upon except the proved sales by Wentworth previously, and the instruction of the court concerning the legal effect of that fact, that the jury understood the fact as authorizing them to find he had such authority, and that they considered it conclusive upon them, and found the authority against the evidence in the case.

He cited *Low* v. *Mitchell*, 18 Maine, 372, to the point, that, although by taking the stand as a witness, the defendant waived the privilege of refusing to give evidence tending to criminate himself, the waiver only applied to the charge under considera-

tion, and set forth in the complaint; and contended that the provision of R. S., c. 134, § 19, that "in all criminal trials the accused shall, at his own request, but not otherwise, be a competent witness," grants the privileges, and imposes the liabilities of a competent witness, no other; and that the questions to the defendant transcended the limits of a legitimate cross-examination, covering not only matters not testified about in chief, but matters of privilege. These and other objections of the counsel appear in the opinion.

*W. F. Lunt,* county attorney, for the state.

APPLETON, C. J. This was a complaint against the defendant for a single sale of spirituous liquors to one Charles T. Goodwin.

I. The sale was made in the defendant's shop by a clerk in his employ. By R. S., c. 27, § 28, the liability of the master equally accrues whether the sale be by him, his clerk, agent or servant. Being master he is responsible for those in his employ. A sale by a servant in the shop of his master is *prima facie* a sale by the master. The facts that the defendant was in possession of the shop, that he was the owner of the liquors sold and that the sale was made by his servant furnish evidence which unexplained, is amply sufficient to authorize a jury to find the master of the shop guilty. *Com.* v. *Nichols,* 10 Metc., 259. *State* v. *Brown,* 31 Maine, 520. *Com.* v. *Morgan,* 107 Mass., 199.

II. The witness to whom the sale was made was inquired of by the prosecuting officer of government, whether prior to this time he had purchased liquors of the defendant, to which he answered that he had. This evidence was offered to show the assent of the defendant and was properly received. In *State* v. *Bonney,* 39 N. H., 206, on proof of a sale by the defendant's servant, it was held competent to prove that the defendant was engaged in the sale of liquors for the purpose of showing that the servant was authorized by his master to make such sale. Indeed a servant would be little likely to sell without authority. Still less would it be presumed that he would sell in defiance of the will of his master and against his express commands. Sales of liquors by the master show that they were there for sale; and if for sale, it is a reasona-

ble inference in the absence of proof to the contrary that those, who are there to sell other articles, are there to sell the liquors, which the master sells.

III. The instruction to the jury to determine whether the directions given to the clerk not to sell any spirituous liquors were in good faith or not, was proper. If the command was merely colorable and given with the intent that it should be disobeyed and received and acted upon by the servant with the understanding that such was the intent, it would assuredly constitute no answer to this complaint. In *State* v. *Simons*, 17 N. H., 83, the defense was, the liquors were a gift and not a sale. In delivering the opinion of the court, Gilchrist, J., says : "They were instructed to inquire whether the language used by the parties to the alleged sale and their accompanying acts, were used by them to effect a sale of the liquor under such disguises as would render the detection of the crime difficult ; or whether on the other hand, it was the purpose of the defendant to bestow, and of the other parties to receive, the liquors as a gift. Offenses against the law are commonly committed under the protection of some false pretenses designed to avert . or baffle the vigilance of the police, and other evidence than the plain admissions of the parties charged, is commonly found necessary for their conviction."

IV. The evidence on the part of the government had made out a *prima facie* case against the defendant—a sale by his servant of his liquors in his shop.

The defendant might go on the stand as a witness or not. By the constitution, he could not "be compelled to furnish or give evidence against himself." The privilege of exemption from criminative interrogation or cross-interrogation was guarantied to him. But this privilege may be waived. By R. S., c. 134, § 19, "in all criminal trials, the accused shall, at his own request, but not otherwise, be a competent witness." The defendant at his own request became a competent witness, and thereby waived his constitutional privilege. He then subjected himself to the peril consequent upon a cross-examination as to all matters pertinent to the issue. *State* v. *Ober*, 52 N. H., 459. *Com.* v. *Bonner*, 97 Mass., 587. *Com.* v. *Morgan*, 107 Mass., 199. *Connors* v. *The*

*People*, 50 N. Y., 240. Claiming to be a witness in his own behalf "at his own request" he cannot have the privilege of self-exonerative testimony without incurring the dangers incident to discreditive or criminative cross-interrogation.

V. The defendant going upon the stand as a "competent witness" was inquired about as to certain sales made by him prior to the one charged in the complaint to which he made answers admitting prior sales by himself. The witness interposed no objection to answering the question, because the answer might be self-criminative, but the objection was taken by the counsel for the defendant and by him alone.

Now, if there is anything well settled, it is that the privilege of exemption from answering interrogatories, which being answered truly would disclose the guilt of the person interrogated, is the privilege of the witness alone. It is granted because of crime and for its impunity, lest by means of and in consequence of the proof furnished by the answer, the witness may hereafter be subjected to the punishment which the law has affixed to his criminal misconduct. It is the privilege of crime. The interests of justice would be little promoted by its enlargement. "The privilege," observes Nelson, C. J., in *Cloyes* v. *Thayer*, 3 Hill, 564, "belongs exclusively to the witness, who may take advantage of it or not at his pleasure. . . The witness may waive it and testify, in spite of any objection coming from the party or his counsel." In *Ward* v. *The People*, 6 Hill, 144, the court held that the public prosecutor has no right in the trial of an indictment to object that a question put to one of the witnesses called for an answer tending to expose him to criminal punishment; this being an objection which the witness alone is authorized to make. So, in *State* v. *Foster*, 3 Foster, 348, it was to lay with the witness to claim the privilege or not as he may choose. It is obvious, that if the defendant is to be regarded, when testifying, only as a "competent witness," which is what the statute makes him, "at his own request and not otherwise," that the exemption from answering criminative cross-interrogation is personal and the witness alone can claim it. In *Brandon* v. *The People*, 42 N. Y., 265, this very question arose. The plaintiff in error, on her trial for grand larceny, was sworn

as a witness in her own behalf, and on her cross-examination was asked, "have you ever been arrested before for theft?" and the question was objected to by her counsel as an attack upon her character, which had not been put in issue. It was held the question was proper, she not having made any suggestion of privilege. In delivering the opinion of the court, which received the unanimous concurrence of all the members, Ingalls, J., says, "The question was one which the court in the exercise of its discretion had a right to allow to be put and answered. *La Beau* v. *The People*, 34 N. Y., 223. *G. W. T. Co.* v. *Loomis*, 32 Ib., 127. The witness did not claim that she was privileged from answering the question on the ground that it would disgrace her. Hence the case cited by the counsel for the plaintiff in error (*Lohman* v. *The People*, 1 N. Y., 380,) does not apply in this case. I perceive no ground for disturbing the decision of the general term." This opinion was re-affirmed in *Connors* v. *The People*, 50 N. Y., 240. It is well settled that neither party to a suit can raise the objection for and on behalf of the witness. It follows that a party who takes the stand as a witness cannot by his counsel interpose the objection that the inquiry, if truly answered, would lead to self-criminative answers, when the witness, whether regarded as party or witness, does not claim the privilege of exemption from answering. The privilege, it must be borne in mind, is purely personal.

The objection, therefore, that the questions would tend to criminate the defendant if truly answered, would, according to the authorities cited, seem not open to the defendant, as when testifying he did not claim his privilege.

Even if it was otherwise, it will be found that the inquiries proposed were strictly within the principles established in numerous and well considered cases.

VI. The objection is taken that the counsel for the state, in his inquiries of the defendant after at his own request he was a witness, transcended the limits of legitimate cross-examination.

The defendant was charged with having sold intoxicating liquors to one Charles T. Goodwin, on a day certain. It is immaterial, so far as regards his criminal liability, whether the sale was by him or his authorized agent. He was not obliged to testify. He

does testify upon "his own request." He goes on the stand and denies the sale or the authority to sell. He exonerates himself. He denies the commission of the offense charged. He is subject to cross-examination as the necessary result of his assuming the position of a witness. What are the limits which the law imposes on this cross-examination? It will hardly be contended that he can go on the stand and by a simple denial escape all discreditive or criminative cross-interrogation. In *Com.* v. *Morgan*, 107 Mass., 199, the question under consideration arose, and in delivering the opinion of the court, Colt, J., says, "his testimony on cross-examination was admissible, although it tended to criminate himself. By taking the stand as a witness he waived his constitutional privilege of refusing to furnish evidence against himself, and subjected himself to be treated as a witness. Stat. 1866, c. 260. *Com.* v. *Mullen*, 97 Mass., 545. *Com.* v. *Bonner*, 97 Mass., 587. Under our rule, the cross-examination of a witness is not confined to the matters inquired of in chief. *Moody* v. *Rowell*, 17 Pick., 490, 498." If a witness state a fact he is bound to state all he knows about it, though in so doing he may expose himself to a criminal charge. In *State* v. *K.*, 4 N. H., 562, the witness said he knew the defendant was innocent of the offense charged, but he could not state how he knew that without implicating himself. The court said, "if he chooses to testify to that fact, we shall permit the attorney general to inquire how the witness knows that fact, and compel him to answer the question." If he discloses part, he must disclose the whole in relation to the subject matter about which he has answered in part. *Coburn* v. *Odell*, 30 N. H., 562. *Foster* v. *Pierce*, 11 Cush., 437. Answering truly in part with answers exonerative, he cannot stop midway, but must proceed, though his further answers may be self-criminative. Answering falsely as to the subject matter, he is not to be exempt from cross-examination because his answers to such cross-examination would tend to show the falsity of those given on direct examination. If it were so, a preference would be accorded to falsehood rather than to truth. It was held in *Gill* v. *The People*, 5 N. Y. Sup. Ct. Rep., 309, that when the prisoner took the stand as a witness that he could be interrogated as fully as necessary to test the truth of his testimony.

Now what was the matter under investigation ? A sale by the defendant or his servant in his shop. It matters not. whether the sale or the authority to sell is denied. His answer is exonerative. The question is put, "did you have any bottles there filled with gin, whiskey, rum and brandy, pint, quart and half-pint bottles ?" Shall the question be answered ? The question is pertinent to the case. A sale is denied. Before selling, he must have liquors to sell. Selling implies having. It is important to prove having. Having, being admitted, for what purpose were they had ? Were they like—

"broken teacups, wisely kept for show,"

or were they a standing notice to the incomer inviting him to partake of their contents ? His direct examination related to sale made in his shop. It would be a strange restriction upon the right of cross-examination to refuse permission to the inquiry made. In *Com.* v. *Morgan*, 107 Mass., 199, the defendant was indicted for a libel. He denied having seen the libels until they were pointed out to him. On cross-examination he was asked if he was not the publisher of the paper in which they appeared. He, not his counsel, objected on the ground that his answer might criminate him ; but the objection was overruled, and he answered that he, with another, published the paper, and upon exceptions to this ruling the propriety of the ruling was sustained.

The sale here was by the servant. These liquors were in the shop. The purpose for which they were, was material, whether for ornament or for use. The defendant was asked if he had any doubt that he sold to numerous persons within thirty days prior to the sale for which he was on trial. This inquiry he answered in the negative, not however interposing any personal objection to answering. Had the sale been by him, though denied, the question would have been proper. In *State* v. *Foster*, 23 N. H., 348, a witness having testified as to part of a transaction with one Jefferson was asked, if he sold any brandy, in the question, to which he objected to answer as criminating himself, but he was required to answer, and the ruling so requiring him was held correct. In *State* v. *Ober*, 52 N. H., 459, the defendant, on trial of an indictment for keeping liquors for sale, was asked as to sales by him a

year previous to the time mentioned in the indictment, to which he declined answering, because his answer might tend to criminate him. The court did not compel him to answer, but permitted counsel to comment upon his refusal to answer. Upon exceptions to this permission, its propriety was affirmed; the court held the inquiry proper and that he might have been compelled to answer the question propounded by the state's counsel. "It was material," observes Foster, J., "to the issue, if not directly involved in his own proffered testimony. At this point, for obvious reasons, he saw fit to close his lips, and the court allowed him to remain silent. Of this mistaken clemency he cannot now be heard to complain." In *State* v. *Bonney*, 39 N. H., 206, proof that the defendant who kept the hotel sold liquors was received as tending to show that the servant was authorized to make such sale. In *State* v. *Colston*, 53 N. H., 483, evidence that the defendant, the keeper of the Sherman House, kept liquors there at a certain date, has a tendency to prove that the defendant, still keeping the same house, kept liquors there at a subsequent date.

The inquiry made, and to which we have referred, and similar inquiries were proper on cross-examination. The subject matter of investigation was a sale claimed to be illegally made. The question of authority to sell was raised. True, the authority of the servant to sell was denied. But he was properly cross-examined to negative the truth of that denial. His own example would tend to show whether his denial was true or not, and whether there was authority to sell or not. This is fairly a part of the transaction disclosed in the direct testimony. His acts tending to negative the truth of his denial related to the subject matter of the sale, which he denied having authorized. He might have been asked if he did not authorize the sale. Equally he might be asked as to other acts of his, tending to prove authority. That the defendant kept the shop at which the liquors were sold; that they were his; that he was in the habit of selling them; that the servant who, it was asserted, has disobeyed his command, was retained in his employ to the time of trial, were facts proper for the consideration of the jury, upon the inquiry whether the command, given to the servant alleged to be disobedient, was given to

be obeyed or disobeyed; whether it was real or colorable; and whether the servant acted in accordance with the understood and actual wishes of his master, or was imperiling his property as well as his person, by action in direct disobedience to his commands.

The counsel refer us to *Tillson* v. *Bowley*, 8 Greenl., 163, and to *Low* v. *Mitchell*, 18 Maine, 374, as authorities against the correctness of the cross-examination of the respondent as conducted by the county attorney. These were bastardy cases, and the complainant was inquired of as to whether, about the time charged in the complaint, she had intercourse with any other man than the respondent, by whom the child might be begotten. The presiding justice ruled that she was not obliged to answer, and the ruling was sustained in the first case by Weston, J., who says, "the complainant could not be held to answer a question admitting or accusing herself of an offense which by our law may be criminally prosecuted."

The limits of the cross-examination of a witness, who, at the same time is a party, were not discussed by counsel, nor considered by the court. The general rule is well settled that a witness, while not obliged to criminate himself, may waive that privilege, and consenting to testify to a matter criminating himself, must testify in all respects relating to that matter as far as may be material to the issue. Now the issue in the cases cited, was the paternity of a child begotten by somebody upon the body of the complainant. It is obvious that the more unchaste the mother, and the more numerous her paramours, the greater the uncertainty of paternity. The defendant is charged with the paternity of the child to be born. That is the matter in issue about which the inquiry was made in the first instance, and about which the complainant has consented to testify. Cannot she be cross-examined to weaken or negative the force of her direct charge? Her knowledge of the paternity is the question, and cannot she be inquired of as to the possibility of her assured knowledge, as to who, among the recipients of her favors, is entitled to the doubtful honors of fatherhood?

In *Low* v. *Mitchell*, 18 Maine, 372, Shepley, J., while merely affirming the first decision, says, if the witness "consents to testify

to one matter tending to criminate himself, he must testify fully in all respects relative to that matter, so far as material to the issue." If the matter of paternity was the matter in issue, as it was, having voluntarily commenced testifying, the witness must testify fully thereto, so far as is material to the issue. Such is the logical result of the general doctrine of the opinion. Swift Ev., 81. *Norfolk* v. *Gaylord,* 28 Conn., 309.

A witness on cross-examination must answer as to all matters pertinent to the issue, whether inquired about in the direct examination or not, unless a personal privilege is invoked and the matters elicited would tend to criminate him ; in which case, the cross-examination can be extended only to the subject matters of inquiry of the direct examination. In the case at bar, the subject matters of inquiry were a sale and whether it was authorized by the defendant—involving the double inquiry of a sale and its authorization—which being denied by the defendant, he was properly cross-examined as to his acts tending to show that whatever was done in his shop was done by his implied authority.

VII. By R. S., c. 27, § 55, it is enacted that "in any suit, complaint or indictment, or other proceeding against any person for a violation of any of the provisions of this chapter relating to spirituous liquors, other than for the first offense, it shall not be requisite to set forth particularly the record of a former conviction, but it shall be sufficient to allege briefly, that such person has been convicted of a violation of any particular provision or as a common seller, as the case may be, and such allegation in any criminal process, legally amendable in any stage of the proceedings, before final judgment, may be amended, without terms, and as a matter of right." By § 57, the form is specially prescribed and in the briefest terms.

The allegation in the complaint under consideration is "that the said Horace Wentworth has once been convicted of a single sale under section 28 of chapter twenty-seven of the Revised Statutes of Maine, in the county of York, to wit: on the twelfth day of October, A. D. 1874, in the municipal court of said city of Biddeford."

It is obvious that the legislature did not require technical ac-

curacy. The time when, the court before which, the chapter and section under which, the conviction was had, are briefly set forth. By § 28, single sales are punishable and the punishment in case of second conviction is increased. A conviction of a single sale under § 28, must be intended to mean a conviction of a sale prohibited by § 28, and of the sale of what is thereby prohibited to be sold.

The allegation is sufficiently certain without an amendment. Upon recurring to the record introduced to show a prior conviction, it appears that judgment was rendered upon the defendant's plea of guilty, so that the fact of such conviction is established by proof which he, at least, cannot very well controvert.

*Exceptions overruled.*
*Judgment for the state.*

WALTON, BARROWS, DANFORTH and VIRGIN, JJ., concurred.
PETERS, J., concurred in the result.