May Term, 1849.

MOYER
v.
McCULLOUGH.

-------

## Moyer and Others *v.* McCullough.

If a person, not made a party to a bill, appear and answer, he cannot assign for error that he was not made a defendant.

By act of congress, *March* 3d, 1821, *Canadian* volunteer certificates are assignable.

When the register of the land office admits, according to law, the location of such a certificate on certain land, and grants a certificate of the location, his authority for disposing of the land thus located is at an end; and the register's subsequent sale of it, though to a person without notice, is not sustainable in a Court of equity against the location.

The issuing of a patent is a ministerial act; if it issue by mistake and without authority, the party having the previous equitable title to the

May Term,
1849.

MOYER
v.
McCULLOUGH.

Tuesday,
May 30.

land, may, by bill in chancery, obtain, from the patentee or his voluntary grantee, the legal title.

In such cases, though the question considered depends on acts of congress, the Courts of this state have jurisdiction.

ERROR to the *Marion* Circuit Court.

BLACKFORD, J.—This was a bill in chancery filed in the *Marion* Circuit Court in 1844, by *William McCullough* against *Jacob Moyer*, *Jacob Beagle* and wife, *Abraham Snyder* and wife, and *George Moyer*.

The bill alleges, *inter alia*, that the complainant, by means of a *Canadian* volunteer certificate, issued under an act of congress, located a certain quarter section of land situate in *Marion* county; that, afterwards, the register of the land office sold, by mistake, the same land to the ancestor of the defendants with notice of the location; and that, in pursuance of such sale by mistake, a patent for the land was issued to the defendants' ancestor.

The bill prays that the defendants be required to release to the complainant their claims under the patent, and for general relief.

*John Moyer*, though not made a party by the bill, appeared to the suit, and, as one of the defendants, answered the bill, denying the alleged mistake, and claiming the land under a voluntary conveyance from the patentee. The defendants named in the bill disclaimed all interest in the suit. The complainant filed a general replication to the answer of *John Moyer*. An agreement as to some of the facts was filed in the cause, which agreement was entitled as follows: " *William McCullough* v. *John Moyer* and others," and was signed by the counsel of the parties.

The facts are as follow:

On the 20th of *February*, 1818, a certificate for 160 acres of land to be located in *Indiana*, was, under an act of congress, of 1816, granted by the secretary of war to *Thomas Sargeant* as a *Canadian* volunteer.

On the 13th of *June*, 1818, *Sargeant* assigned said certificate to the complainant.

On the 30th of *July*, 1821, the complainant, as assignee

of the certificate, applied at the land office in *Brookville*, to locate the certificate on the land now in dispute; and the location was then accordingly made.

At the time last mentioned, the register made, on the location-book of *Canadian* volunteer land warrants, kept in his office for the purpose, the following entry:

" Land office at *Brookville*, 30th of *July*, 1821. No. 4. I, *William McCullough*, assignee of *Thomas Sargeant*, do hereby apply to locate the N. E. ¼ of section 34, township 16, range 2 E., of the second principal meridian, containing one hundred and sixty acres, by *Canadian* volunteer certificate, No. 251, dated 20th of *February*, 1818, and granted to said *Thomas Sargeant*."

The register also, at the same time, gave to the complainant a certificate of the location as follows:

" Land office, *Brookville*, 30th *July*, 1821. *William McCullough* located in this office the N. E. ¼ of section 34, township 16, range 2 E., of the second principal meridian, by *Canadian* volunteer certificate, No. 251.

" *Robert Hanna*, Jun., Register."

The complainant, on making said location, surrendered his *Canadian* volunteer certificate to the register; and the certificate was afterwards transmitted, by the register, to the general land office at *Washington*.

After the said location was thus made, the register, in transferring the entry thereof from the location-book to the tract-book in his office, made a mistake, and entered in the tract-book, as located by the complainant, a different tract from the one which was really located. In consequence of this mistake, the said quarter section of land, which the complainant had located, appeared on the tract-book as vacant, and as being for sale.

The register also, in his report of sales to the general land office, made a mistake, in his description of said location, similar to the one just mentioned.

Afterwards, namely, on the 24th of *September*, 1821, the defendants' ancestor came to the *Brookville* land office, and applied to the register to enter the quarter section of land which the complainant had previously located, but

which appeared on the tract-book to be vacant. The register, thereupon, sold the same quarter section to the applicant by mistake, the latter having no notice of the previous location, unless the entry aforesaid on the location-book amounted to such notice.

On the 20th of *February*, 1823, a patent for the land so purchased by the defendants' ancestor was issued to him; and he, on the 2d of *February*, 1833, executed a voluntary conveyance for the same land to his son *John*, who has filed an answer in this suit.

There is no evidence that any of the parties ever took actual possession of the land.

The decree of the Circuit Court is in favor of the complainant.

This decree is objected to on the ground, that *John Moyer*, one of the plaintiffs in error, was not made a party by the bill. The record shows, however, that he appeared to the suit and filed an answer, and that, to his answer, the complainant filed a general replication. The record also shows an agreement as to some of the facts, filed in the cause, and signed for said *John Moyer* by counsel. We think that, under those circumstances, it is too late now for him to say that he was not a defendant.

The second objection made to the decree is, that the *Canadian* volunteer certificate was not assignable. In support of this objection we are referred to an opinion of the attorney general of the *United States* given in 1819. But after that opinion was given, and probably in consequence of it, congress passed an act on the subject. That act expressly authorizes the assignees to locate such certificate, and receive patents for the land, in their own names; and it was passed several months before the complainant's location was made. Act of congress, *March* 3, 1821.

Another objection relied on is, that a state Court has no jurisdiction of the cause.

The question involved in the suit is, whether, in a Court of equity, the complainant's location should not prevail over the patent to *Moyer*. Admitting the claims in dis-

pute to depend upon acts of congress, it does not follow that the validity of those claims is not examinable in a state Court. It is not uncommon for a Court, in determining a suit, to be obliged to have recourse even to the laws of a foreign country. It is true, that the judicial power of the *United States* is extended, by the constitution, to all cases arising under the constitution, laws, and treaties of the *United States*. But, though the constitution requires the jurisdiction in such cases to be extended to the federal Courts, it does not deprive the state Courts, in the first instance, of their jurisdiction. The 25th section of the judiciary act of 1789 provides for writs of error from the decisions of the highest state Court in cases arising under the laws of the Union. We have no doubt but that, in the case before us, though the question be considered as depending on acts of congress, the Courts of the state have jurisdiction in the first instance. It may be that congress has the power to exclude state Courts from jurisdiction in such cases, but there has been no attempt yet to do so.

The last objection urged is, that the patent must prevail over the complainant's location. But this objection is unfounded. When the register of the land office, in accordance with the law authorizing him to act in the premises, admitted the location to be made, and granted a certificate of the location, his authority for disposing of the land thus legally located was at an end. The land was no longer in the market; and the register's subsequent sale of it, though to a person without notice, is not sustainable, in a Court of equity, against the location. The complainant stands on the ground of a person who has purchased and paid for the land at the land office. The situation of such purchaser between the time of the purchase and the issuing of the patent is stated by a *United States* Court to be as follows: "Until the patent is issued, the purchaser has not the legal title, but having made his entry of the land and paid for it, the government can no more dispose of the land to another person, than if the patent had been issued."—*Astrom* v. *Ham-*

May Term, 1849.

Moyer
v.
McCullough.

*mond*, 3 McLean, 107. The respondent contends that, at all events, the validity of the patent can only be examined, in a direct manner, by means of a *scire facias*, or some other proceeding, in the name of the *United States*. But that is a mistake. The issuing of the patent is a ministerial act; and if, as in the present case, it issue by mistake and without authority, the party having the previous equitable title to the land, may, by a bill in chancery, obtain from the patentee or his voluntary grantee, the legal title. The Supreme Court of the *United States* recently, in an action of ejectment, decided against the defendant in that suit on the ground that the patent under which he claimed had been issued against law. *Stoddard et al.* v. *Chambers*, 2 Howard, 284.

*Per Curiam.*—The decree is affirmed with costs.

*W. W. Wick* and *L. Barbour*, for the plaintiffs.

*O. H. Smith*, for the defendant.