# Commonwealth of Pennsylvania *v.* P. V. Rovnianek, Appellant.

*Libel—Implied authority and malice.*

The doctrine of implied authority, in libel, is applied in its severity only in cases of implied negligence or implied malice.

*Libel—Presumption of principal's liability, when rebuttable.*

A presumption exists that an owner of a newspaper is criminally liable for any libel published by his servant or agent even though he had no knowledge of it, if his servant was acting in pursuance of general orders,

86, (1899).]                Syllabus—Statement of Facts.

but when the orders are special and directed to the prohibition of any publication affecting the particular prosecutor the rule is different, and the presumption may be rebutted.

*Libel—Evidence to rebut presumption of authority.*

It was error on the trial of an indictment for libel to reject an offer of the defendant, a part owner of a newspaper, to prove that, at and before the publication of the libel, he was absent from the city, and that prior to his departure he gave explicit instructions that during his absence nothing whatever should be published of or concerning the prosecutor, and that while away he had no control or supervision over the newspaper or knowledge that the libels were to be or that they had been published.

*Presumption of malice and negligence, rebuttable—Question for jury.*

Whether, upon all the evidence, the fact that the publication was not maliciously or negligently made is established to the satisfaction of the jury, is for the jury to determine; the presumption that it was so made is a rebuttable one. Like every other presumption it should yield to proof which satisfactorily negatives and overcomes it.

*Criminal law—Practice, Q. S.—Indorsement and return of indictment.*

The indorsement on the indictment by its foreman, its return to court and the addition of the prosecutor's name by order of court, are sufficient evidence of the finding of the indictment by the grand jury on the testimony of the witnesses whose names were indorsed by the district attorney, and who were duly sworn.

Argued Oct. 2, 1899.   Appeal, No. 18, April T., 1900, by defendant, from judgment of Q. S. Allegheny Co., Dec. Sess., 1898, No. 528, on verdict of guilty.   Before RICE, P. J., BEAVER, ORLADY, SMITH, W. W. PORTER, W. D. PORTER and BEEBER, JJ.   Reversed.   Opinion by ORLADY, J.

Indictment for libel.   Before SHAFER, J.

It appears from the record that defendant was indicted for alleged libelous articles published in two newspapers of which defendant was the half owner.   The publication was admitted at the trial.   It also appears that the indictment was returned to court and that, upon hearing of a motion to quash, the name of a responsible prosecutor, added by order of the court, was indorsed on the indictment.   The indictment was returned to the court with the indorsement " True Bill, George Loozen, Foreman," and under the designation of " Test. pro. respub." the names of five persons, including that of the prosecutor, were added.   It did not appear that there was an affirmative declaration on the indictment that these witnesses were called by the grand jury and duly sworn by one of its number.

On the trial defendant's counsel made the following offers of evidence, the defendant being on the stand; all of which were rejected by the court:

1. [Defendant, by his counsel, proposes to prove by Peter Rovnianek, the witness on the stand and the defendant in this case, that he is one of the proprietors of the within two newspapers mentioned in the indictment in this case; that three or four days before the publication of either of the libels complained of in the indictment he was compelled to, and did leave the state of Pennsylvania; that before leaving he left specific instructions at the office to the persons in charge of the publication of each and both of said papers that nothing whatever should be published of or concerning Kremery, the prosecutor in this case, during his absence; that he remained away from the state of Pennsylvania until about August 22, 1898, and during that time had no control or supervision over either of said newspaper or their contents, although continuing to be one half owner of said papers; that the articles complained of were published on August 4 and August 20, respectively, and that he had no knowledge or information that the same were to be published or were published; and that the same were published in violation of the directions or orders left by him at the office prior to his departure. This for the purpose of tending to rebut the prima facie presumption of malice shown by the publications in the said papers of which he is proprietor, also to show the lack of negligence upon the part of him, the said defendant, and also the exercise of due diligence upon his part likewise rebuts the prima facie presumption of malice; and lastly, for the purpose of introducing evidence proper for the submission to the jury upon the question of whether or not the libel complained of in this case was maliciously published by the defendant.

Objected to as incompetent and irrelevant. Objection sustained. Bill sealed for defendant.] [1]

2. [Defendant now proposes to prove by the witness upon the stand, to be followed by other witnesses, that the libel complained of in the indictment was published in each of said papers at the time when the defendant was absent from the state of Pennsylvania, and at a time when the defendant, although continuing to be part owner of both papers, exercised no control

or supervision over the publication of said papers or the contents thereof, and that each of said alleged libels were published in violation of specific orders left by the said defendant at the office of the said papers and with the persons in charge of the publication of said papers before his departure; and this for the purposes mentioned in the preceding offer.

Objected to as incompetent and irrelevant.   Objection sustained.   Bill sealed for defendant.]  [2]

3. [Defendant by his counsel further proposes to prove by the witnesses upon the stand, to be followed by other witnesses, that the defendant, although a part owner of both of the newspapers mentioned in said indictment, did not know of the insertion or publication of either of the articles complained of as libels, had no part or lot in connection with the publications, and was not in the state of Pennsylvania at the time the same were published.

Objected to as incompetent and irrelevant.   Objection sustained.   Bill sealed for defendant.]  [3]

The court charged the jury, inter alia, as follows:

[Now, of course, in ordinary criminal matters, a man could not be liable criminally for what he did not do himself or did not know about, but in the law of libel there has always been, since the law of libel began, a rule in criminal libel in England (and I take it that it still exists to-day in Pennsylvania because no statute has been pointed out to us changing it; or no case in which it has been held to be changed by the Supreme Court or any court), that the proprietor and publisher of a newspaper is responsible for what appears in that paper whether he knew about it or not, whether he was there or not, and I take it whether it was done in direct disobedience to his directions.]  [5] . . . .

[There is no difference, then, between the liability of the proprietor for the publications in his newspaper in a civil suit and a criminal suit, except that if it was in a civil suit we would allow to be offered in evidence the fact that he did not know anything about it, in order to mitigate the damages.   In a criminal suit there are no damages.   These facts are to be taken into consideration in mitigation of the sentence, but that is a matter for the court.]  [6]

Verdict of guilty and sentence thereon.   Defendant appealed.

*Errors assigned* among others were (1–3) to rejection of offers of evidence on behalf of defendant, reciting said offers. (5, 6) To portions of the judge's charge, reciting same.   (9) In refusing defendant's motion in arrest of judgment, alleging as reasons: "1. That the name of the prosecutor did not appear upon the back of the indictment.   2. That the indictment was defective in that it contains certain names of persons as witnesses before the grand jury, yet fails to show that they were sworn either by the foreman or any member of the grand jury, or by any person whatsoever before or after they testified to the grand jury.   3. The indictment does not show affirmatively that any of the witnesses examined before the grand jury were sworn by any persons whatsoever.   4. The indictment was not subscribed by the foreman of the grand jury."

*Clarence Burleigh* and *W. A. Blakeley*, for appellant.—It will not be disputed that in order to convict of libel, the commonwealth must show by competent and sufficient evidence that the publication was malicious : Wharton's Criminal Law, sec. 1648.

It will not be disputed that publication is only prima facie evidence of malice : Wharton's Criminal Law, sec. 1627 ; 3 Greenleaf on Evidence, sec. 170.

The publication being only prima facie evidence of malice, it is, of course, subject to be rebutted by any testimony negativing this presumption.   Testimony tending to show absence of malice, absence of personal ill will, absence of negligence—the existence of all due care upon the part of the defendant, is surely competent, and is for the consideration of the jury, especially if the defendant at the time was absent, had no control or supervision over the columns of the newspaper.

We submit that this is not the law, and claim that any owner of any publication may, if he can, rebut this prima facie presumption of malice by any competent testimony.   That evidence showing absence of malice in its popular sense—showing due care—showing absence of negligence—is competent.   To say the very least, it is evidence which should be submitted to the jury under proper instructions.

In England it is now a good defense to show that the libel was published without the authority, consent or knowledge of the proprietor and from no want of due care on his part :

R. v. Holbrook, L. R. 3 Q. B. Div. 60; 14 Cox C. C. 185. Com. v. Willard, 9 W. N. C. 524, bears out our contention.

In our case the publisher was out of town, out of the state, obliged to trust the management of his paper to another during his absence; specific absolute orders were left that nothing was to be published of or concerning the prosecutor—the direct and absolute violation of these orders, and the overwhelming fact, conceded by the offer, that the defendant had no control or supervision whatever over the newspapers, or their columns, during his absence: Rex v. Williams, Lofft, 759–762.

The principle which governs this case was laid down by Judge ELLSWORTH in Barnes v. State, 19 Conn. 398.

It will be conceded that it is absolutely necessary in order that an indictment be found by the grand jury that witnesses be produced before the grand jury, and that every witness who testifies before the grand jury must be sworn, or otherwise duly qualified, and it will further be conceded that any indictment, such as the one in this case, found without the testimony of any witness, or found upon the statements of persons who appeared before the grand jury and who were not sworn, or otherwise duly qualified, is fatally defective, and should be quashed on motion : Com. v. Leisenring, 2 Pears. 466.

No book or appearance for appellee.

OPINION BY ORLADY, J., December 11, 1899:

The appellant was convicted in the court below of publishing a malicious and defamatory libel against the prosecutor. On the trial it was admitted that the defendant was one of the owners and one of the proprietors of the two newspapers in which the libelous articles were made public, and, for the purpose of overcoming the legal presumption of malice and negligence which was established by the publication of the offending matters, the defendant offered to show that several days prior to the publication of either of the libels he was compelled to and did leave the state; that, before leaving his home, he gave specific instructions at the office to the persons in charge of the publication of each and both of said newspapers that during his absence nothing whatever should be published of or concerning the prosecutor; that during the period of time in which the

libels were published in the newspapers, he was not in the state and had no control or supervision over either of said newspapers ·or their contents, although he continued to be a half owner of the said papers, and that he had no knowledge or information that the same were to be, or, that they had been published.

The objection to the offers that they were incompetent and immaterial was sustained by the court and the jury was in- ;structed, that, " There has always been since the law of libel began, a rule in criminal libel, that the proprietor and pub- lisher is responsible for what appears in his paper whether he knew about it or not, whether he was there or not, and I take it, whether it was done in direct disobedience to his directions."

The rule in criminal libel at common law was always regarded .as exceptionally severe, but it did not reach the degree as stated by the learned trial judge.   In R. v. Gutch, Moody & Malkin, ·433, Lord TENTERDEN directed the jury to find the defendants .guilty, and justified the rule then held, on the ground that as " it seemed to be conformable to principle and common sense ; .surely a person who derives profit from, and who furnishes means for carrying on the concern, and entrusts the conduct of the publication to one whom he selects, and in whom he con- fides may be said to cause to be published what actually ap- pears, and ought to be answerable, although you cannot show that he was individually concerned in the particular transac- tion.   It would be exceedingly dangerous to hold otherwise, for then an irresponsible person might be put forward, and the person really producing the publication, and without whom it ·could not be published, might remain behind and escape al- together," and yet, in a case against the same defendants, who were tried the following day, on a similar charge, the same learned .jurist stated to the jury, " I do not mean to say, nor ever did mean to say, that some possible case may not occur in which the proprietor would be exempted, but generally speaking, he ·is answerable ; " and after a verdict of guilty, he discharged the ·defendant who was found guilty on his own recognizance.   The ·earlier cases in England and in this country held that mere ab- .sence from home and want of knowledge of the publication did not answer the presumption of malice and of negligence ; the reason being that if proprietors or publishers could avoid re- ;sponsibility by telling their foreman not to admit anything per-

sonal in the columns, and then absent themselves while a libel was being printed and circulated, they could easily make the newspaper a vehicle for the distribution of the most atrocious libels with perfect impunity, and this view has been held in many cases : Rex v. Walter, 3 Esp. N. P. Cases, 21; King v. Topham, 4 Term Rep. 126 ; Attorney General v. Siddons, 1 Cr. & J. 220; Dunn v. Hall, 1 Ind. 343; Smith v. Utley, 92 Wis. 133 ; Bruce v. Reed, 104 Pa. 408 ; Shepheard v. Whitaker, L. R. 10 C. P. 522; Perret v. New Orleans Times, 25 La. Ann. 170 ; Andres v. Wells, 7 Johnson (N. Y.), 261; Commonwealth v. Morgan, 107 Mass. 199; Lothrop v. Adams, 133 Mass. 471.

Partners are the general agents of each other and of the firm within the scope of the business of the partnership. While the proprietor of a newspaper may be liable in the civil and criminal courts for a libel published, without his knowledge, by the agent whom he has intrusted with the management of the newspaper, under authority of the above and other cases the law is not so rigid as to justify the exclusion of the defendant's offers as they were made. It was deemed necessary in England to correct the law in this respect and the statute of 6 and 7 Vic. C. 96, section 7, was enacted to permit the defendant to show that the publication was made without his authority, consent, or knowledge, and that it did not arise from want of due care and caution, but, even in England, without the aid of this statute, judges have declined to apply the rule in view of special defenses which fully negatived the idea of want of care and inferred malice in the publication: Rex v. Almon, 5 Burr. 2686 ; Reg. v. Holbrook, 13 Cox C. C. 650 ; 14 Cox. C. C. 185.

In Odgers on Libel and Slander, sec. 412, it is stated that the inclination of our courts has of late years been not to press the doctrine of implied authority so far as was done in the older cases, and it appears to be conceded that the law is applied in its severity in cases of implied negligence or implied malice only, as the learned text writer declares; where the instructions are express, there can be no difficulty.

A master or principal is criminally liable for any libel published by his servant or agent, even though he had no knowledge of it, if his servant was acting in pursuance of general orders, but when the orders are special and directed to the prohibition of any publication affecting the particular prose-

cutor the rule is and should be different. If the wrongful act is committed by the authority of the master either expressly conferred or fairly implied from the nature of the employment and the duties thereby imposed, his absence from the place of publication and his want of knowledge of it are not a sufficient defense to rebut the legal presumption.

But the offers in this case, if supported by credible evidence of the good faith of the instructions given to those who had sole control and supervision of the newspapers, taken in connection with his absence from home and want of knowledge of the publication and intention to publish would tend to make as complete a defense—short of a denial of every relation to the newspaper—as a proprietor could make. A proprietor cannot be expected to suspend the publication of his newspaper during his absence from home, and there is a marked difference in a case where the employer gives the agent general instructions to properly conduct the business, but leaves its general management to the discretion of the agent, from a case where the employer gives specific directions to not publish anything at all of, or concerning, a particular person. Malice and negligence are in law presumed from a defamatory publication; when the defense is based on their absence the burden is on the defendant. Whether, upon all the evidence, the fact that the publication was not maliciously or negligently made is established to the satisfaction of the jury, is for the jury to determine: Com. v. Swallow, 8 Pa. Superior Ct. 539. The presumption thus raised is a rebuttable one, and like every other presumption it should yield to proof which satisfactorily negatives and overcomes it. If this were not so, every possible precaution to prevent publishing a libel against a particular person, accompanied by a total absence of direct or inferred malice, and an honest supervision of the business of the proprietor, would be nugatory and could be designedly thwarted by an employee's surreptitious publication who acted in defiance of precise instructions of the employer, or by a publication effected through the corrupt combination of enemies.

The evidence shows that the defendant was one of several owners and publishers of the newspapers. The indictment is against him solely, and the defense applies personally to him. Had the charge been against all the persons who were associ-

ated as proprietors and publishers, the evidence which should relieve one, would doubtless assure the conviction of the guilty party or parties.

The first, second and third assignments of error are sustained; the evidence covered by them should have been received and submitted to the jury under proper instructions. The record shows that while the indictment was found by the grand jury without a proper indorsement of the name of a prosecutor, yet, upon a hearing of a motion to quash, the name of a responsible prosecutor, and "added by order of the court" were afterwards indorsed on the indictment. It is further shown that the indictment was returned to the court with the indorsement, "True Bill, George Loozen, Foreman," and under the designation of "Test. pro. respub." the names of five persons, including that of the prosecutor, were added. While there is not an affirmative declaration on the indictment that these witnesses were called by the grand jury and duly sworn by one of its number, the indorsement on the indictment by the foreman, its return to the court, and the addition of the prosecutor's name by order of the court are, under the statute and the practice in this state, sufficient evidence of the finding of the indictment by the grand jury on the testimony of witnesses whose names were indorsed by the district attorney, and who were duly sworn.

The fifth and sixth assignments of error are sustained. The judgment is reversed and a venire facias de novo awarded.