[Decided November 5, 1894.]

# STATE *v.* MASON.

## STATE *v.* WATSON.
### [S. C. 38 Pac. 130; 26 L. R. A. 779.]

1. CRIMINAL LIBEL — EVIDENCE — OPINIONS OF WITNESSES AS TO PERSON RE-
FERRED TO — CODE, § 1364.—When a libelous article does not directly name
the person referred to, and the application of the words used is uncertain,
persons who are acquainted with the prosecuting witness and the circum-
stances alluded to in the article, may state their judgment and understand-
ing as to whom the libelous matter was intended to refer; and the rule is
the same in both civil and criminal cases, especially in view of the terms
of section 1364, Hill's Code.

2. CRIMINAL LIBEL — PRESUMPTION OF MALICE.— Every injurious publication
concerning another, if it contains libelous matter, is presumed to have
been made maliciously, and this presumption continues until it appears
that the libelous matter is in fact true, and was published with good mo-
tives and justifiable ends.

3. CRIMINAL LIBEL — REFERENCE TO PROPERTY OF PROSECUTING WITNESS.—
Where the words of a publication apply to a person's property in such a
way as to injure his reputation by exposing him to hatred, contempt, or
ridicle, it is a libel on such person.

4. CRIMINAL LIBEL — INTENT TO INJURE — MALICE — CODE, § 1749.— Although
section 1749 of Hill's Code provides that if any person shall publish or
cause to be published concerning another any false or scandalous matter
" with intent to injure or defame" he shall be punished, etc., it is not nec-
essary, in order to constitute the offense of libel, that the defendant should
have entertained a specific malicious intent to injure or defame the prose-
cuting witness; the natural and probable consequence of such a publica-
tion is to injure and defame, and the law presumes that the defendant
intended such results when he committed the act complained of.   To ren-
der an act malicious it is not necessary that it be done from a bad heart or
with a distinct purpose to injure; but any intentional infliction upon
others of a wrong not warranted by law is malicious, though it may have
been honestly intended to accomplish a good end.

5. CRIMINAL LIBEL — KNOWLEDGE OF MANAGER OR PROPRIETOR.*— When a
libel is published in a newspaper the proprietor is *prima facie* criminally

*This case is reported in 26 L. R. A. 779 with a collection of authorities on the
civil and criminal liability of newspaper proprietors for libels published in their jour-
nals without their knowledge or consent, considered with reference to individuals, to
members of corporations, and to partners.— REPORTER.

liable, and he cannot excuse himself by showing that the article was pub-
lished without his knowledge or consent, unless it further appears that its
publication did not occur through any negligence or want of ordinary
care on his part.

APPEAL from Multnomah: M. G. MUNLY, Judge.

O. P. Mason and Ben P. Watson were convicted of
criminal libel, and appeal.        AFFIRMED.

*Mr. James Finley Watson*, for Appellants.

*Mr. Wilson T. Hume*, district attorney, (*Mr. Geo. E. Cham-
berlain*, attorney-general, on the brief), for the State.

Opinion by MR. CHIEF JUSTICE BEAN.

1.   The defendants were indicted, tried, and convicted
of the crime of libel for publishing in a newspaper called
the "Sunday Mercury" a libelous article in which the
name of the person alluded to therein, who, it is claimed,
is the prosecuting witness, was not mentioned.   For the
purposes of this appeal it is unnecessary to set out the
article so published, or its substance, and therefore for
this and other obvious reasons it is omitted.   At the trial,
witnessed were called by the state who testified that on
reading the article they understood, from their acquaint-
ance with the prosecuting witness, and the circumstances
alluded to in the publication, that it was intended and de-
signed to refer to him.   This evidence was admitted by
the court, over the objection of defendant, and such ruling
is relied upon as error.   The meaning of the defendants,
and whether the libel was of and concerning the pros-
ecuting witness, are undoubtedly questions of fact, to be
determined by the jury under the instructions of the court;
but the important question still remains, can the under-
standing or impression that persons may get from reading
the objectionable article be received as evidence of such

facts ?  Upon this question the authorities are somewhat
conflicting.   In the following reported cases it is held that
such evidence is not admissible for any purpose: *Van
Vechten* v. *Hopkins*, 5 Johns. 211, 4 Am. Dec. 339; *Gibson* v.
*Williams*, 4 Wend. 320; *Goodrich* v. *Davis*, 11 Metc. (Mass.),
484; *Snell* v. *Snow*, 13 Metc. (Mass.), 282, 46 Am. Dec. 730;
*Oldtown* v. *Shapleigh*, 33 Me. 278.   But, on the other hand,
it is held, and we think with the better reason, that when
the words are ambiguous as to the person intended, and
their application doubtful, persons who read the libel and
are acquainted with the parties and the circumstances,
may state their judgment and understanding as to whom
the libelous charges referred: 2 Greenleaf on Evidence,
§ 417; Odgers on Libel and Slander, 539; *Smart* v. *Blanchard,*
42 N. H. 137; *Russell* v. *Kelly*, 44 Cal. 641, 13 Am. Rep. 169;
*Miller* v. *Butler*, 6 Cush. 71, 52 Am. Dec. 768; *Nelson* v. *Bor-
chenius*, 52 Ill. 236; *Knapp* v. *Fuller*, 55 Vt. 311, 45 Am.
Rep. 618; *McLaughlin v. Russell*, 17 Ohio, 475; Note to *Van
Vechten* v. *Hopkins*, 4 Am. Dec. 339.   The weight of au-
thority undoubtedly supports this latter doctrine, and we
understand defendant's counsel to admit this to be the rule
in actions for damages, but he contends it should not pre-
vail in criminal prosecutions.   This question, it seems to
us, is settled by the statute of this state, which provides
that the law of evidence in civil and criminal actions shall
be the same, except as otherwise provided in the Code
(section 1364); but whether it is or not, we have been
unable to discover any difference between civil and crim-
inal actions in the general rule governing the admission of
evidence to show that the words were intended to be used
in an actionable sense, and, when ambiguous, to whom
they were intended to apply.   In either case it is incum-
bent on the plaintiff or prosecution to show by proper
averments and proof that the defendant intended to apply
the words used to the plaintiff or person designated in the

indictment as the subject of the libel; and evidence competent in the one case must necessarily be so in the other. The object and purpose to be attained by such evidence is the same in civil and criminal cases, and the reason and necessity for its admission applies with equal force to both classes of actions: 3 Greenleaf on Evidence, § 174; *State. v. Fitzgerald*, 20 Mo. App. 408; *Commonwealth* v. *Buckingham*, Thacher's Crim. Cas. 29; *Commonwealth* v. *Morgan*, 107 Mass. 199. In this case the language of the libel, so far as the person referred to is concerned, is ambiguous, and its application doubtful; and therefore, under the rule we have stated. the evidence of the witnesses as to whom they understood it to refer was compentent.

The state, as part of its case in chief, offered in evidence and the court admitted, against the defendant's objection, certain affidavits made by him for a continuance, separate trial, and change of venue. Just what the state expected to prove by these affidavits is not clear from the record before us; but if their admission was an error, it was manifestly not a prejudicial one, as the affidavits contained nothing which could in any way, so far as we can see, affect the substantial rights of the defendant, or prevent a fair and impartial trial.

2. The remaining assignments of error are based on the giving and refusal of certain instructions by the trial court, and defendant contends that the court, in charging the jury, fell into three leading errors which vitiated a number of the instructions given, and led to the rejection of all that he requested. Those three alleged errors, as stated by his counsel, are: (1) "That the proprietor or manager of a newspaper is liable criminally, under our statutes, for whatever appears in the paper, although it may have been published without his knowledge or consent; (2) that, the publication being proven, the malice and intent to injure are conclusively presumed; (3) that a

person may be convicted of a libel upon the property of another." In reference to the last two questions as thus stated by counsel it seems to us he has misinterpreted the language used by the court. We have carefully examined the instructions, but do not find it stated anywhere therein that malice and an intent to injure are conclusively presumed from the fact of publication. The court instructed the jury "that malice does not mean a personal ill will toward a person libeled. If the publication be found libelous, the law implies malice. If the publisher published carelessly, not knowing or indifferent what, he is held responsible as though he read every word. It is a settled principle of the law that every person is presumed to intend the reasonable and natural consequences of his own act; so, as I have said, if you are satisfied that the defendant published the newspaper article set out in the indictment, and that it was false and scandalous, you are obliged to presume that it was done maliciously and wilfully, with intent to injure and defame." This is but an application to the facts in the case the rule that when an injurious publication is false, and is in itself defamatory, the law infers malice, whether the offender intended ill will toward the person injured or not: 3 Greenleaf on Evidence, 618; 2 Wharton's Criminal Law, § 1648; 2 Bishop's New Criminal Law, §§ 922 923; *Commonwealth* v. *Snelling*, 15 Pick. 337; *Haley* v. *State*, 63 Ala. 83. Every injurious publication of and concerning another, if it contains libelous matter, is presumed to have been made maliciously, and this presumption continues until it appears that the matter charged as libelous is in fact true, and was published with good motives and justifiable ends.

3. Nor do we understand the court to have ruled that the defendant could be convicted for a libel upon the property of the prosecuting witness alone, but that, if the words used apply to his property in such a manner as to

injure his reputation by exposing him to hatred, contempt, or ridicule, it would be a libel upon him, and this we believe to be the law.

4. This brings us to the most important question in the case, and that is whether, under our statute, it is a defense for the proprietor or manager of a newspaper, when indicted for libel, to show that the libelous article was published without his consent or knowledge. The statute provides that "if any person shall * * * publish or cause to be published of or concerning another any false and scandalous matter with intent to injure or defame such other person, upon conviction thereof (he) shall be punished," etc.: Hill's Code, § 1749. It is contended for the defendant that, to constitute the offense of libel under this statute, the defendant must have entertained a specific intent "to injure and defame" the prosecuting witness, and that this intent could not have existed if the publication was made without his knowledge or consent. But the law presumes that every person intends the natural and probable consequences of his own act, and, therefore, as the natural and probable consequences of the publication alleged in the indictment were to injure and defame the prosecuting witness, the law will infer that the defendant, if he caused or negligently permitted the publication, intended such consequences, although he may have entertained no special ill will or malice toward the person injured. "It is not necessary to render an act malicious," says Chief Justice SHAW, "that the party be actuated by a feeling of hatred or ill will toward the individual, or that he entertain and pursue any general bad purpose or design. On the contrary, he may be actuated by a general good purpose, and have a real and sincere design to bring about a reformation of manners; but if, in pursuing that design, he wilfully inflicts a wrong on

others which is not warranted by law, such act is malicious": *Commonwealth* v. *Snelling*, 15 Pick. 340.

5.   The question then recurs as to whether the manager or proprietor of a newspaper can escape criminal responsibility solely on the ground that the libelous article was published without his knowledge or consent.   When a libel is published in a newspaper, such fact alone is sufficient evidence *prima facie* to charge the manager or proprietor with the guilt of its publication.   By the English authorities prior to Statutes 6 and 7, Victoria, chapter XCVI, it was generally held, though not without some dissent, that the presumption was not overcome by showing that the defendant was perfectly innocent of any share in the criminal publication, upon the ground that it was necessary in order to prevent the escape of the real offender behind some irresponsible person: *Rex* v. *Gutch*, 1 Moody & M. 433; S. C. 22 Eng. C. L. R. 559; *Rex* v. *Walter*, 3 Esp. 21.   But, by the statute referred to, the question was put at rest, and a defendant was permitted to prove as a defense that the publication was made without either his consent or knowledge, and that it did not arise from want of due care or caution on his part.   This, it is believed, is but a statutory declaration of the principles which ought to limit criminal liability for the acts of another, and which have generally been recognized by the courts of this country in similar cases.   The manager and proprietor of a newspaper, we think, ought to be held *prima facie* liable criminally for whatever appears in his paper; and it should be no defense that the publication was made without his knowledge or consent, unless it further appears that it did not occur through any negligence or want of ordinary care on his part.   One who furnishes the means for carrying on, and derives profit from, the publication of a newspaper, and intrusts its management to servants or employés whom he selects

and controls, may be said to cause to be published what
actually appears, and should be held responsible therefor,
whether he was individually concerned in the publication
or not, if he did not exercise proper care and oversight
over the business intrusted to his servants.   Criminal re-
sponsibility for the acts of an agent or servant in the
course of his employment necessarily implies some degree
of moral guilt or delinquency on the part of the principal;
but this may be shown either by direct participation in or
assent to the act, or by a want of proper care or over-
sight, or other negligence in reference to the business in-
trusted to the servant.   We think, therefore, the mere fact
that the libelous article was published in the newspaper
without the knowledge or consent of its proprietor or
manager is no defense to a criminal prosecution against
such proprietor or manager.   In *Commonwealth* v. *Morgan,*
107 Mass. 199, this question was considered, and it was
held that in a criminal prosecution the publisher of a
newspaper in which a libel appears is *prima facie* pre-
sumed to have published the libel, and that the exclusion
of an offer by the defendant to prove that he never saw
the libel, and was not aware of its publication until it was
pointed out to him, and that an apology and retraction
were afterwards published in the same paper gave him no
ground of exception.   This case is so well considered,
and the rule governing the criminal liability of the pub-
lisher of a newspaper for a libelous article appearing
therein is so satisfactorily stated, that we venture to
quote from the opinion of the court at some length.   The
court, speaking through Mr. Justice COLT, says: "It is
the duty of the proprietor of a public paper, which may
be used for the publication of improper communications,
to use reasonable caution in the conduct of his business,
that no libels be published.   He is civilly responsible for
the wrong. to the extent indicated; and he is criminally

liable, unless the unlawful publication was made under
such circumstances as to negative any presumption of
privity, or connivance, or want of ordinary precaution on
his part to prevent it: 3 Greenleaf on Evidence, §§ 170,
178. We are of opinion that the offer of the defendant
did not go far enough, in view of the law thus stated, to
rebut the presumption of guilt arising from the publica-
tion of this libel. The facts offered may be true, and yet
entirely consistent with the fact that the conduct of the
newspaper was under his actual direction and charge, at a
time when he was neither absent from home nor confined
by sickness, and when his want of knowledge would neces-
sarily imply criminal neglect to exercise proper care and
supervision over the subordinates in his employ. It is
consistent also with such information in this instance, in
regard to the proposed libelous attack, as should have put
him on inquiry; and with the fact that the general man-
agement of the paper was of such a character as to justify
the inference that the defendant approved of or connived
at publications of this description, and had given his gen-
eral assent to them. Under such circumstances, the de-
fendant ought not to be permitted to escape on the plea
that he had not seen the particular article, and did not
know of its publication."

So, also, in the case at bar. The fact that defendant
did not see or know of the libelous article until after its
publication is not in any way inconsistent with the other
fact that the paper may have been under his personal su-
pervision and control, so that his want of knowledge would
necessarily imply either a criminal neglect in failing to ex-
ercise proper care and supervision over his subordinates,
or criminal indifference as to the character of the articles
appearing in the paper. It is entirely consistent, also,
with the fact that the management of the paper and its

general character may have been such, and, indeed, if we are to judge from the copy of it appearing in the transcript, it undoubtedly was such, as not only to justify the inference but the belief that its proprietor or manager approved of or connived at the publication of articles of the character set out in the indictment, and had at least given his general consent to their publication. Under such circumstances, and in view of the law as we understand it, the court committed no error in instructing the jury that "it is not a justification in a newspaper proprietor to show that the article was published without his consent or knowledge": Wharton's Criminal Law, §§ 1627, 1649; 1 Bishop's New Criminal Law, §§ 219, 220, 221; *People* v. *Wilson*, 64 Ill. 195, 16 Am. Rep. 528; *Commonwealth* v. *Damon*, 136 Mass. 441. Finding no error in the record, the judgment of the court below must be affirmed.

AFFIRMED.