# STATE v. WORKERS' SOCIALIST PUBLISHING COMPANY, A. A. TOIVENEN AND OTHERS.[1]

December 2, 1921.

No. 22,440.

**Insurrection and sedition — Criminal Syndicalism Act of 1917 valid.**

1. The criminal syndicalism act of 1917 is not so indefinite as to violate the provision of our Constitution that in any criminal prosecution the accused shall be entitled to know the nature of the accusation against him.

**Indictment under the act sufficient.**

2. The indictment in this case is sufficiently specific as to the particulars of the crime.

**Newspaper article held a violation of the act.**

3. An article in a newspaper, stating among other things that capital will never submit without the bloodiest battle history has ever known, and that the workers must learn to fight until the capitalistic class is overthrown and rests blood-stained at the feet of the labor giant, advocates violence as a means of accomplishing industrial ends and is a crime under said statute.

**Statute applies to corporations.**

4. The act is applicable to corporations.

**Intent to advocate not necessary.**

5. Intent to advocate is not an ingredient of the offense.

**Managing editor may be criminally responsible for unlawful publication.**

6. The managing editor of a newspaper is criminally responsible for an unlawful publication made in the paper, unless the unlawful publication is made under such circumstances as to negative any presumption of privity or connivance or want of ordinary precaution on his part to prevent it. It is not a defense to merely show that the editor was not aware of the publication. Under this rule the managing editor was liable criminally in this case.

**Business or circulation manager must have notice to be criminally liable.**

7. A business or circulation manager, with no editorial duties, is not

[1]Reported in 185 N. W. 931.

criminally liable under the statute, unless he knowingly circulates the paper, that is, circulates it knowing its contents.

Defendants were indicted by the grand jury of St. Louis county charged with the crime of teaching and advocating syndicalism, tried in the district court for that county before Dancer, J., and a jury and found guilty as charged in the indictment. From an order denying their motion for a new trial, Workers' Socialist Publishing Company, A. A. Toivonen and Topias Kekkonen appealed. Affirmed as to defendants publishing company and Kekkonen, and reversed as to defendant Toivonen.

*Oliver S. Andresen* and *Arthur Lesueur,* for appellants.

*Clifford L. Hilton,* Attorney General, *James E. Markham,* Assistant Attorney General, and *Warren E. Greene,* County Attorney, for respondent.

HALLAM, J.

Defendants were indicted and convicted under chapter 215, p. 311, Laws 1917, known as the criminal syndicalism act. Defendants appeal.

The language of the statute is as follows: "Any person who by word of mouth or writing, advocates or teaches the duty, necessity or propriety of crime, sabotage, violence or other unlawful methods of terrorism as a means of accomplishing industrial or political ends, or prints, publishes, edits, issues or knowingly circulates, sells, distributes or publicly displays any book, paper, document or written matter in any form, containing or advocating, advising or teaching the doctrine that industrial or political ends should be brought about by crime, sabotage, violence or other unlawful methods of terrorism  *  *  *  is guilty of a felony." Chapter 215, p. 311, Laws 1917.

1. Defendants contend that the statute is so uncertain and indefinite that it is in violation of the provision of our Constitution that, in any criminal prosecution, the accused shall be entitled to know the nature and cause of the accusation against him. Const. Minn. art. 1, § 6. This statute was before the court in State v. Moilen, 140 Minn. 112, 167 N. W. 345, 1 A.L.R. 331. Its constitutionality was there sustained

as against attack made on other grounds. We think it must also be sustained as against the contentions of the defendants. It forbids any one to teach the duty, necessity or propriety of crime, sabotage and other unlawful methods of terrorism as a means of accomplishing industrial or political ends. These words need no further definition. The language used seems to us to fairly and plainly define the crime which the statute creates.

2. The contention is made that the indictment is not sufficient. The indictment charged that the defendants wrongfully, wilfully, feloniously and unlawfully published and circulated an article which is set out at length in the indictment. The substance of the article is: The workers have nothing in common with the capitalist class, but they must fight always and by all means for the overthrow of the capitalist class; the rebellious movements among the workers in this country do not have a real revolutionary character; the tradesmen who belong to the "fogy conservative trade unions" principally participate in strikes, but they are easily deceived and appeased; their leaders are on friendly terms with the so-called exploiters; the trade unions have hardly a semblance of revolutionary significance, and the strikes declared by them will never produce anything which will better the lot of the workers. Then follows this language:

"The fact is, however, that the organized capitalist class of America will never submit to the mercy of the workers without the bloodiest battle history has ever known. It will never, although it should see the workers rising as a mighty force against it, yield before it has used all its means to overthrow it. It will fight and shall fight to the last drop of blood for its exploitation privileges when it sees the overwhelming rise of the labor movement aiming at its destruction. It need not be expected that the capitalists in America will yield the power to the workers willingly more than they have done in other countries, but the workers must take it themselves and march to victory over the ruins of the capitalistic system. We can be certain of that."

And this: "The American workers must learn the revolutionary A-B-C's, that is to fight always and unceasingly with all possible and impossible means until the capitalist class is overthrown, until it rests

blood-stained at the feet of the labor giant, then only the battle will begin to produce results. Then it need not beg and wait, but can have what it needs."

The indictment alleges that said printed matter "advocated, advised and taught the doctrine that industrial and political ends should be brought about by crime, sabotage, violence and other unlawful methods of terrorism."

Defendants invoke the rule that, where a criminal statute uses generic terms, an indictment in the language of the statute is not sufficient, but it must state the particulars, citing U. S. v. Simmons, 96 U. S. 360, 24 L. ed. 819, and other cases. Giving full force and effect to the rule invoked, we are of the opinion that the indictment sufficiently states the particulars of the crime.

3. Defendants contend that the facts alleged do not state a public offense, or, in other words, that the article as published is not a violation of the statute. With this we cannot agree. The language of the article advocates not only violence but bloodshed as a means of accomplishing industrial ends when it says that capital will never submit without the "bloodiest battle history has ever known" and that the workers must learn to fight always and unceasingly until the capitalist class is overthrown, and "until it rests blood-stained at the feet of the labor giant."

4. Defendant corporation contends that the act of 1917 is not applicable to corporations. With this we do not agree. The statutes of this state expressly provide that, in the construction of penal statutes, the word "person" includes a corporation, save when otherwise plainly declared or clearly apparent from the context. G. S. 1913, § 8467, subdivision 11. This seems decisive of defendant's contention. Further language in subdivision 11 that, whenever the word person is used to designate a party whose property may be the subject of any offense, it also includes the state, is not a limitation as to the meaning of the language which goes before. The latter provision does not, as defendant contends, limit corporate criminal liability to crimes against property.

5. The intent of the teacher or advocate is not an ingredient of the offense and need not be charged or proved. State v. Gilbert, 141 Minn. 263, 169 N. W. 790.

6. The trial court read to the jury the following language of section 8648, G. S. 1913: "Every editor or proprietor of a book, newspaper, or serial, and every manager of a  *  *  *  corporation by which any  *  *  *  newspaper  *  *  *  is issued, is chargeable with the publication of any matter contained in such book, newspaper, or serial," and instructed the jury that, if defendant Kekkonen and Toivonen were such managers or editors as contemplated in the statute, then they were responsible criminally for whatever was published.

The court further charged in substance that this meant that managers or editors "immediately active in the publication of a paper" with "more or less control over what matters shall be included in the newpaper" or "immediately in charge of the getting out of a newspaper and  *  *  *  responsible for what it contained, would be criminally liable" and that, if "Kekkonen and Toivonen were such managers or editors,  *  *  *  then they are responsible criminally for whatever may have been published in that paper  *  *  *  and the mere fact  *  *  *  that the article may have been written by some other person  *  *  *  and that they did not happen to know about it personally before it was published, would not relieve them from criminal liability  *  *  *  if their duties were such as to make them responsible for that paper and its contents under this statute."

It may be doubted whether the statute quoted has application to this case. It was first introduced into the statutes of the state as section 215 of the Penal Code of 1885, and as part of the law of criminal libel. However, we find, in the part of the statute quoted, taken in connection with the explanation of the court, nothing materially different from the generally accepted rule of common law. See State v. Mason, 26 Ore. 273, 38 Pac. 130, 26 L.R.A. 779, 46 Am. St. 629; Commonwealth v. Morgan, 107 Mass. 199; People v. Fuller, 238 Ill. 116, 135, 87 N. E. 336; Newell, Slander & Libel, § 483. In fact the charge of the court, taken as a whole, is a substantially correct statement in the abstract of the common law principles applicable to this case.

The managing editor of a newspaper is criminally responsible for an unlawful publication made in the paper, unless the unlawful publication was made under such circumstances as to negative any presump-

tion of privity or connivance or want of ordinary precaution on his part to prevent it. Commonwealth v. Morgan, 107 Mass. 199. In that case it was held not a sufficient defense to show that the editor never saw the article before it was published, was not aware of its publication until the paper was shown him, and that he then made a retraction.

If the rule given by the trial court was right, we do not think it was material error to state that it was a statutory rule instead of a rule of common law.

In the case of Kekkonen, the evidence showed that he was managing editor of the paper. The by-laws of the corporation by which the paper was produced, make it the duty of the managing editor to superintend the make-up of the paper, and he testified that he did as the by-laws directed, though he also said the division of labor was such that he exercised no supervision over the page on which the article in question appeared, and that he did not see it until after it was published. Within the rules above laid down, we think the evidence was sufficient to sustain a finding that Kekkonen was, as managing editor, responsible criminally for the publication of this article.

7. As to Toivonen, the case is quite different. He was business manager. He had no editorial duties. His work, in general, was to purchase supplies, attend to the financial business of the corporation, and in general to take charge of the office. He arranged for the printing of the paper. The circulation and mailing of the paper was under his charge, and was in fact done through the Duluth News Tribune Company, which company printed the paper and delivered it to the Post Office for mailing. In other words, defendant Toivonen had no part in editing or producing the paper. He only circulated and distributed it.

In our opinion Toivonen was not a manager of the corporation within the meaning of section 8648. Neither was he at common law liable for the insertion of matter in the paper, for over such matter he had no control. And the terms of the statute of 1917 make the act of circulation and distribution a crime only where the person charged "knowingly circulates" or "distributes," that is, where such person circulates or distributes the paper knowing its contents. There is no evidence

that Toivonen had any knowledge of the contents of this paper, and his duties did not require him to have such knowledge. The evidence was insufficient to sustain a verdict of guilty against him.

The order appealed from is reversed as to the defendant Toivonen and as to the defendants Workers' Socialist Publishing Company and Kekkonen it is affirmed.

DIBELL, J.

I concur.in the result reached as to Toivonen and dissent from the result reached as to the others.