THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.*
AGUSTÍN DE JESÚS, Defendant and Appellant.

No. 8395. Argued December 18, 1940.—Decided January 16, 1941.

*Ubaldo Aponte* and *José C. Aponte* for appellant. *George A. Mal-
colm, Attorney General, R. A. Gómez, Prosecuting Attorney,* and
*Luis Negrón Fernández, Assistant Prosecuting Attorney,* for ap-
pellee.

MR. JUSTICE DE JESÚS delivered the opinion of the court.

The appellant, upon being convicted of libel, was sen-
tenced to pay a fine of $25, with costs, and in default of
such payment, to be confined in jail one day for each dollar
left unpaid. He appealed to this court and in support of
his appeal he urges that the lower court erred in overruling
the demurrer which he interposed to the complaint, in deny-
ing his motion for nonsuit, and lastly, in not acquitting the
defendant for insufficiency of the evidence.

The demurrer was based on the ground that, accord-
ing to the defendant, the complaint did not allege that the

publication was made concerning the prosecutor. Let us examine first the complaint. It says:

"I, Benito Cancel Rivera, residing at No.___, Nueva Urbanización Street, Salinas, Puerto Rico, of age, file this complaint against Agustín De Jesús, for the crime of libel committed as follows: That on November 4, 1939, in the town of Salinas, within the Municipal Judicial District of Salinas, which forms part of the Judicial District of Guayama, Puerto Rico, the said defendant Agustín De Jesús, did unlawfully, wilfully, and maliciously on the date above stated, cause to circulate in a newspaper called El Látigo, of which the defendant is editor, *the following imputations tending to impeach the honesty, integrity, virtue, and reputation of my person, thereby exposing me to public hatred, contempt, and ridicule:*

"And they appear published at page 8 of said newspaper El Látigo thus:

"8. Dismissed from the central for having copper in his possession.

"9. Expelled from the Politecnic Institute for indecent acts.

"11. Charged with larceny in Maricao, with the difference that he changed there his unfortunate name.

"15. He failed to account to the Marín Distillery of Mayagüez, for certain commissions which he received.

"16. He swindled Gilberto E. Rodríguez of Mayagüez, in connection with the business of 'Las Mesas' mineral water.

"Although the defendant did not expressly mention any name in this case he has done so in previous issues giving the impression that the person I was to whom he referred.

"We offer as evidence the issues of November 4, No. 8; and that of September 23, 1939. The latter issue is No. 1.

"An act contrary to law."

It will be noted that in the complaint it is expressly alleged that the defamatory inmputations refer to the person of the prosecutor, which allegation is completed by the reference made in the same complaint to the articles of the newspaper "El Látigo," which were attached as exhibits, and which therefore form part of the complaint. Exhibits 1 and 2 read as follows:

Exhibit 1. "THE HISTORY OF A SOCIAL CANCER. 1. Aliancist in 1931. 2. Socialist in 1932. 3. Nationalist in 1934. 4. Socialist in

1935. 5. Republican in 1935. 6. Nationalist in 1936. 7. Socialist in 1938, notwithstanding the fact that a red ticket assembly rejected his admission, and, thanks to San Agustín, said assembly reconsidered its previous decision and admitted him. 8. Dismissed from the central for having copper in his possession. 9. Expelled from the Politecnic Institute for indecent acts. 10. He lives like a toad and snake, on tickets given to him by the municipal feed trough for use at Fano's store. 11. Charged with larceny in Maricao, with the difference that he changed there his unfortunate name. 12. He kept money belonging to 'El Imparcial.' 13. He claimed to be a leader, the poor devil, but ignorant of the fact that in order to be one, he must have the ability and sincerity regarding labor and socialist ideals and not to attempt climbing the heights of power through adulation and servility. 15. He failed to account to the Marín Distillery of Mayagüez, for certain commissions which he received. He swindled Gilberto E. Rodríguez of Mayagüez in a deal concerning 'Las Mesas' mineral water. This, our esteemed readers, is the history of a social canker.

Exhibit 2. "BENITO CANCER THE ENEMY OF ORGANIZED LABOR. In the newsheet of the Socialists of City Hall called 'Grito Obrero' which is published in this town, there appears on page 4 of its issue of September 10, an article entitled 'The Liberals Celebrate Labor Day,' in which the author of the same writes some inanities which fully reveal him as a fool and uninitiate in questions relating to organized labor. We have always celebrated labor day in Salinas with splendor and enthusiasm, and inasmuch as in the labor unions there are workmen belonging to all the political parties, we are not going to deny that on this occasion as in the past there were Liberals, Republicans, Pure Socialists, and Populars. What 'El Grito Obrero' and its patrons of City Hall regret is that said celebration turned out to be the most important one of its kind held here, despite the fact that the Socialists of City Hall resorted to every means available to them in their attempt to make the same a failure.

"Benito Cancer lacks authority to intervene in labor questions, because he is the greatest traitor which the workers of Salinas, and similarly the socialists, have. This individual can not complain because an assembly of organized men and women decided to hang the portrait of our illustrious labor leader Rafael Alonso Torres in the place where that of our comrade Santiago Iglesias formerly hang and the latter portrait on another wall, for Benito Cáncer when he was an Aliancist he flew to the Socialist encampment in 1929, when the group of Good Government was formed and subsequently in 1933, he

became Union Republican and after that, as a repented Magdalene he came back to the Socialist Party in 1935, and then in 1936, from the Nationalist platform in Salinas he insulted, abused, and slandered Santiago Iglesias.

"We insert below some paragraphs of a letter which we keep in the files of the Pure Socialist Committee written by Benito Cancel Rivera, on August 25, 1936:

" 'This letter has also another purpose, I wish to submit through it my resignation as a member of the Socialist Party. I embrace a new flag and a new ideal, nurturing the hope that I shall see you, as well as yours, follow also my political course as a result of the absolute conviction that the problems of our people may only be solved through the immediate establishment of our own republic, free and independent from all American guardianship.

" 'In my collegiate life, feeling the warmth of new ideals and wide horizons, I have reached the unavoidable conclusion that I have made a fundamental mistake in defending, as you know I had with energy, the Socialist principles of Insular Socialism; from this camp which I regard as being more noble, more patriotic, more exhalted (the Puerto Rican Nationalism) I shall look with sorrow upon your futile struggles, but as I have already said, always hopeful of being able to embrace you fraternally all united under the immaculate ideal of a free country.'

"Thus spoke and thought Benito Cáncer in 1936, the year when in the city of Mayagüez where Benito was, the most cowardly and dastardly attempt was perpetrated against Santiago Iglesias by a Nationalist, and this Benito, with his silence, approved that cowardly attempt against Santiago Iglesias, the same Iglesias who was made the object of insulting and vexatious remarks by Cáncer from the Nationalist platform in Salinas, and now this same man has the sarcasm and irony of calling Iglesias 'venerable master,' etc.

"We have more of the Cáncer correspondence and we propose to paint him as he is revealed by his own letters. Until the next one."

In the case of *People* v. *Aybar,* 14 P.R.R. 526, 528, this court said:

"Upon an examination of the complaint we do not find it to contain any defect which could invalidate it, for, taken together with the article forming part thereof, it contains all the elements necessary to make up the crime of libel, as defined in the Penal Code in force, and, according to the judgment of conviction pronounced by the

lower court, it was shown at the trial that the said article had been published with reference to José I. Gómez.''

Although the articles of September 26 (Exhibit 2) reference is made to the prosecutor under the name of Benito *Cáncer* instead of Benito Cancel Rivera, his true name, no mental exertion is required to conclude that the Benito Cáncer mentioned in the article is the same Benito Cancel Rivera who filed the complaint, and that the libelous words contained in both articles refer to that person.

The case of *People* v. *Santos*, 24 P.R.R. 58, cited by the appellant, has no application herein. In that case the alleged defamatory matter read as follows:

''We understand with respect to the wages that the contract is being violated and that the foremen and overseers are trying to come to an understanding with you; that from now on the highest daily wage will be seventy-five cents and that this is due to the fact that Iglesias sold himself, etc., (*sic*). What rascals these foremen and overseers are! Instead of telling you that they can no longer rob you of fifty or sixty dollars a week, as they did formerly, they try to make you believe that the contract is prejudicial to you—all to the end of preventing you from organizing.''

In considering the sufficiency of the complaint, this court said:

''The alleged libel as set forth in the complaint named no one. There is no averment therein to show that the words were spoken of any special foremen or overseers. No company, association or particular set of foremen or overseers is mentioned in the words quoted from the handbill and there are no facts alleged in the complaint tending to show that they were the persons to whom allusion was made, other than that they were affected by the publication. Section 87 of the Code of Criminal Procedure sets forth:

'' 'Section 87.—An information for libel need not set forth any extrinsic facts for the purpose of showing the application to the party libeled of the defamatory matter on which the information is founded; but it is sufficient to state generally that the same was published concerning him, and the fact that it was so published must be established on the trial.'

"Hence it was necessary to allege that the words were published of the foremen who maintain that they were injured. For all that the complaint discloses, the alleged libel might have been published of someone else and have still accidentally affected the foremen here. The foremen of the Fajardo Sugar Grower's Association were not identified and the complaint was insufficient."

What has been said above shows that the trial court did not err in overruling the demurrer.

 Let us now turn to consider the sufficiency of the evidence.

First, there were introduced in evidence the two articles whose contents we already know. In addition to that there was the testimony of the prosecutor who stated that the said articles referred to him and that in previous issues of the same paper the defendant had similarly referred to him as Benito Cáncer, and that of José Maldonado, who stated that the prosecutor has been nicknamed Benito Cáncer as a result of a discussion between two small newspapers; that after he read the newspaper he met the prosecutor and told him: "See what they say about you in this newspaper; see what they have called you"; and that the prosecutor answered: "If you have read it, I am going to call you as a witness in this case"; that on reading the article "The History of a Social Cancer," he thought that it referred to Benito Cancel by reason of the above-mentioned polemic between the two newspapers.

In our judgment, the whole evidence justifies the conclusion reached by the trial court to the effect that the libelous articles refer to the prosecutor and to no other person.

In the case of *People* v. *Balzac*, 28 P.R.R. 139, 142, it was said:

"Here, also, the language used in the libelous publication is so abusive that we do not think it proper to transcribe it. It will suffice to say that the court has examined the publication and considers that although the name of Arthur Yager, Governor of Porto Rico, is not directly mentioned therein, there is no doubt that it refers to

him, and it was so understood by the citizens of the district of Arecibo who testified at the trial.''

See also the cases of *Russell* v. *Kelly*, 44 Cal. 641, *State* v. *Mason*, 38 Pac. 130, in the first of which citation is made, with approval, of the work Starkie on Slander, vol. 2, p. 51, and it is held that the fact that the defamatory words refer to the plaintiff may be established by the testimony of witnesses who knew the parties and the circumstances and who were in a position to give their opinion regarding the application and meaning of the expressions used by the defendant.

The defendant introduced no evidence in the present case, and as the court *a quo* accorded full credit to the evidence introduced by the prosecutor and the same is, to our mind, sufficient to support the judgment, we must conclude that no error was committed by the lower court in denying the motion for nonsuit and in rendering the judgment of conviction complained of.

For the reasons stated the appeal must be overruled and the judgment appealed from affirmed.