EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* AGUSTÍN DE JESÚS, acusado y apelante.

Núm. 8395.—*Sometido:* Diciembre 18, 1940. *Resuelto:* Enero 16, 1941.

*Ubaldo Aponte* y *José C. Aponte,* abogados del apelante; *Hon. Procurador General George A. Malcolm, R. A. Gómez, Fiscal del Tribunal Supremo* y *Luis Negrón Fernández, Fiscal Auxiliar,* abogados de El Pueblo, apelado.

EL JUEZ ASOCIADO SEÑOR DE JESÚS emitió la opinión del tribunal.

El apelante, convicto de un delito de libelo infamatorio, fué sentenciado a pagar una multa de $25 y las costas, y en defecto de pago a cumplir un día de cárcel por cada dólar de multa que dejare de satisfacer. Apeló para ante este tribunal, alegando en apoyo de su recurso que la corte inferior erró al desestimar la excepción perentoria que interpuso contra la denuncia, al desestimar la moción de *nonsuit,* y por último al no absolver al acusado por insuficiencia de la prueba.

La excepción perentoria está basada en que según el acusado, la denuncia no alega que la publicación se hiciera con referencia a la persona del denunciante. Examinaremos en primer término la denuncia. Dice así:

"Yo, Benito Cancel Rivera, vecino de Salinas, Puerto Rico, calle de Nueva Urbanización, número___, de mayor de edad años, formulo

denuncia contra Agustín de Jesús, por delito de libelo infamatorio, cometido de la manera siguiente: Qué en 4 de Nov. de 1939, y en el pueblo de Salinas del Distrito Judicial Municipal de Salinas, que forma parte del Distrito Judicial de Guayama, P. R., el referido acusado, Agustín de Jesús, de una manera ilegal, voluntaria y maliciosamente, en la fecha que arriba se expresa, hizo circular en un periódico llamado El Látigo, del cual es director el acusado, *las siguientes imputaciones tendientes a impugnar la honradez, la integridad, virtud y buena fama de mi persona, exponiéndome así al odio, desprecio y ridículo público:*

"Y aparecen publicadas así en la página 8 de dicho periódico El Látigo:

"8. Despedido de la Central por habérsele encontrado cobre en su poder.

"9. Expulsado del Instituto Politécnico por actos deshonestos.

"11. Acusado de hurto en Maricao, con la diferencia de que allí se cambió su desgraciado nombre.

"15. No respondió a la Licorería Marín, de Mayagüez, de unas comisiones que recibió.

"16. Le dió un timo a Gilberto E. Rodríguez, de Mayagüez, en su negocio de agua mineral 'Las Mesas'.

"Aunque no menciona el acusado mi nombre expresamente en este caso, lo ha hecho en números anteriores, dando la impresión de que es a mí la persona a quien alude.

"Presentamos como evidencia los números del día 4 de noviembre, núm. 8; y el del 23 de septiembre de 1939, ambos. Este último es el núm. 1.

"Hecho contrario a la ley."

Se observará que en la denuncia expresamente se alega que las imputaciones libelosas se refieren a la persona del denunciante, alegación que se completa con la referencia que en la misma denuncia se hace a los artículos del periódico "El Látigo", acompañados como *exhibits,* y que por lo tanto forman parte de la misma. Los *exhibits* 1 y 2 dicen así:

*Exh.* 1 "LA HISTORIA DE UN CÁNCER SOCIAL. 1. Aliancista en el año 1931. 2. Socialista en el año 1932. 3. Nacionalista en el año 1934. 4. Socialista en el año 1935. 5. Republicano en el año 1935. 6. Nacionalista en el año 1936. 7. Socialista en el año 1938, a pesar de que una asamblea de carta roja rechazó su ingreso, y, gracias a

San Agustín, aquella asamblea rectificó su anterior decisión y lo aceptó. 8. Despedido de la Central por habérsele encontrado cobre en su poder. 9. Expulsado del Instituto Politécnico por actos deshonestos. 10. Vive como el sapo y la culebra, con vales que le dan del comedero municipal para la tienda de Fano. 11. Acusado de hurto en Maricao, con la diferencia de que allí se cambió su desgraciado nombre. 12. Se quedó con los chavos de 'El Imparcial'. 13. Pretende ser líder, ignorando el desgraciado que, para ello, debe tener aptitudes y sinceridad con los ideales obreros y socialistas y no pretender subir a la cúspide del poder mediante la adulación y el sometimiento. 15. No respondió a la licorería Marín, de Mayagüez, de unas comisiones que recibió. 16. Le dió un timo a Gilberto E. Rodríguez, de Mayagüez, en un negocio de agua mineral 'Las Mesas'. He aquí, amados lectores, la historia de una lacra social.''

*Exh.* 2 ''Benito Cáncer, Enemigo del Trabajo Organizado. En el papelucho de los Socialeros de la Alcaldía llamado 'Grito Obrero' que se edita en este pueblo, apareció en la página cuatro de su edición de septiembre 10, unas notas tituladas 'Los Liberales Celebran el Día del Trabajo,' en las cuales el autor de las mismas dice unas cuantas sandeces que lo retratan de cuerpo entero como un pelele, y un profano en las cuestiones del trabajo organizado. 'El Día del Trabajo' siempre lo hemos celebrado en Salinas con esplendor y entusiasmo y como quiera que en las Uniones del Trabajo hay obreros de todos los partidos políticos, no vamos a negar que en este acto, como en el pasado, habían liberales, republicanos, socialistas puros y populares. Ahora lo que siente 'El Grito Obrero' y sus auspiciadores de la alcaldía es que dicho acto resultó el más importante de todos los celebrados en el pasado, a pesar que los socialistas de la alcaldía apelaron a todos los recursos que brinda una alcaldía para hacer fracasar el mismo.

''Benito Cáncer carece de autoridad para intervenir en las cuestiones del trabajo, porque es el traidor más encarnizado que tienen los trabajadores de Salinas, igual que los socialistas. Este sujeto no puede hablar, porque una asamblea de hombres y mujeres organizados acordaron colocar el retrato del ilustre paladín obrero Rafael Alonso Torres en el sitio donde estaba colocado el de nuestro compañero Santiago Iglesias, y colocar éste en otra pared, porque Benito Cáncer siendo aliancista, voló a las tiendas socialistas en el año 1929, cuando se formó el Grupo de Buen Gobierno y luego en el 1933, se hizo Uniorrepublicano y luego como la Magdalena arrepentida volvió al seno del Partido Socialista en el 1935, para luego en el año 1936,

desde la tribuna nacionalista en Salinas, insultar, vejaminar y calumniar a Santiago Iglesias.

"Insertamos a continuación párrafos de una carta que tenemos en los archivos del Comité Socialista Puro, escrita por Benito Cáncer Rivera, en agosto 25 de 1936:

" 'Tiene, además, esta misiva, otro propósito. Deseo expresarle a través de la misma, mi renuncia como miembro del Partido Socialista. Me acojo a una nueva bandera y un nuevo ideal, anidando la esperanza de verle a Ud. al igual que a los suyos, también seguir mi mismo derrotero político como consecuencia de la absoluta convicción de que los problemas de nuestro pueblo sólo se resuelven en el inmediato establecimiento de nuestra república libre e independiente de toda tutela americana.

" 'En mi vida colegial, al calor con nuevas ideas y amplios horizontes, llego a la conclusión irremediable de que he estado en un fundamental error al defender, como Ud. sabe, con tesón, los principios socialistas del Socialismo Insular; desde este campo que creo más noble, más patriótico, más hidalgo (el Nacionalismo Puertorriqueño), contemplaré con pena vuestras luchas estériles, pero como antes digo, siempre esperanzado en poder extender a usted el abrazo fraterno unidos todos bajo inmaculado ideal de patria libre.'

"Así hablaba y pensaba Benito Cáncer en el 1936, año en que en la ciudad de Mayagüez, donde estaba Benito, se perpetró el atentado más ruin y cobarde contra Santiago Iglesias por un nacionalista, y este Benito, con su silencio, patrocinó aquel cobarde atentado contra Santiago Iglesias, el mismo Iglesias que desde la tribuna nacionalista en Salinas recibió insultos y vejámenes de este Cáncer, y ahora este mismo tiene el sarcasmo e ironía de llamar a Iglesias 'venerable maestro', etc.

"Tenemos más correspondencia de Cáncer y nos proponemos pintarlo tal cual es por sus mismas cartas. Hasta la próxima."

En el caso de *Pueblo* v. *Aybar,* 14 D.P.R. 540, 541, se dijo por este tribunal:

"Examinada la denuncia, no encontramos en ella defecto alguno que pueda invalidarla, pues, relacionada con el artículo que forma parte de ella, contiene todos los elementos integrantes del delito de libelo infamatorio, tal como se define en el Código Penal vigente y en el juicio se justificó según el fallo de convicción pronunciado por la corte inferior, que el expresado artículo fué publicado con referencia a D. José I. Gómez."

Si bien en el artículo de 23 de septiembre (*exhibit* 2) se alude al denunciante con el nombre de Benito *Cáncer* en lugar de Benito Cancel Rivera, su verdadero nombre, no se requiere esfuerzo mental alguno para concluir que el Benito Cáncer a que se refiere el artículo es el mismo Benito Cancel Rivera que formula la denuncia y que a dicha persona se refieren los conceptos libelosos contenidos en uno y otro artículo.

El caso de *Pueblo* v. *Santos,* 24 D.P.R. 64, invocado por el apelante, no es aplicable al de autos. En dicho caso la supuesta materia libelosa decía así:

"Tenemos entendido que en lo que respecta a los salarios, se está violando el contrato, y los mayordomos y capataces se esfuerzan en hacerles entender a Uds. que ahora el jornal más alto será de setenta y cinco centavos, y eso se debe a que Iglesias se vendió, etc., etc. ¡Qué canallas son tales mayordomos y capataces! En vez de deciros que ya ellos no os pueden robar cincuenta o sesenta pesos semanales como lo hacían antes, tratan de haceros creer que el contrato les perjudica a Uds., y todo lo hacen con el fin malévolo de que no os organicéis."

Examinando la suficiencia de la denuncia, se dijo por esta corte:

"El supuesto libelo tal como se describe en la denuncia no mencionaba a nadie. No hay en ésta ninguna alegación que demuestre que las palabras fueron publicadas con referencia a ningún mayordomo o capataz en particular. Ninguna compañía, asociación o clase determinada de mayordomos o capataces se menciona en las palabras que han sido citadas de la hoja suelta y en la denuncia no se alegan hechos tendentes a demostrar que ellos eran las personas a quienes se aludía con excepción de que a ellos les afectaba la publicación. El artículo 87 del Código de Enjuiciamiento Criminal prescribe lo siguiente:

" 'Artículo 87. En una acusación por libelo no es necesario exponer hechos externos con el fin de mostrar la aplicación a la persona injuriada, del caso difamatorio en que se basa la acusación, sino que la difamación fué publicada con referencia a dicha persona, y el hecho de que así fué publicada habrá de justificarse en el juicio.'

"Por tanto era necesario alegar que las palabras fueron publicadas con referencia a los mayordomos que sostienen que fueron perjudicados. De todo lo que revela la denuncia el supuesto libelo podría haber sido publicado con respecto a alguna otra persona y haber afectado todavía accidentalmente a estos mayordomos. Los mayordomos de la Fajardo Sugar Growers' Association no fueron identificados, y la denuncia era insuficiente."

Lo dicho demuestra que no cometió error alguno la corte sentenciadora al desestimar la excepción perentoria.

■ Pasemos ahora a considerar la suficiencia de la prueba.

En primer término, se presentaron en evidencia los dos artículos cuyo contenido conocemos. Declararon además, el denunciante, quien manifestó que dichos artículos se refieren a él, y que en números anteriores de dicho periódico el acusado alude a él en la misma forma de Benito Cáncer, y José Maldonado, quien manifestó que al denunciante le llaman Benito Cáncer como resultado de una polémica que existe entre dos *periodiquitos* locales; que después de leer el periódico se encontró con el denunciante y le dijo: "Fíjate lo que te dicen en este periódico; mira lo que te han puesto;" y que el denunciante le contestó: "Si lo leíste, te voy a poner de testigo en este caso;" que al leer el artículo "La Historia de un Cáncer Social", pensó que se refería a Benito Cancel por la aludida polémica entre los dos periódicos.

A nuestro juicio, la prueba toda justifica la conclusión a que llegó la corte sentenciadora al efecto de que los artículos libelosos se referían al denunciante y no a otra persona.

En el caso de *Pueblo* v. *Balzac,* 28 D.P.R. 152, 153, se dijo:

"También aquí el lenguaje usado en el artículo libeloso es tan abusivo que no creemos justo transcribirlo. Baste decir que el tribunal lo ha examinado y considera que aunque en él no se nombra directamente al Gobernador de Puerto Rico, Arthur Yager, a él se refiere sin duda alguna, habiéndolo estimado así los testigos, ciudadanos del distrito de Arecibo, que declararon en el acto de la vista."

■ Véase el caso de *Russell* v. *Kelly,* 44 Cal. 641, y *State* v. *Mason,* 38 P. 130, en el primero de los cuales se cita con aprobación de la obra de *Starkie on Slander,* tomo 2, pág. 51, para sostener que puede probarse que las palabras calumniosas se refieren al demandante, por declaración de testigos que conocían a las partes y las circunstancias, y quienes estaban en condiciones de manifestar su opinión sobre la aplicación y significado de los términos usados por el demandado.

■ El acusado no presentó prueba en el presente caso, y habiendo la corte *a quo* dado entero crédito a la prueba presentada por el denunciante, y siendo ésta suficiente a nuestro juicio, para sostener la sentencia, debemos concluir que no cometió error alguno la corte inferior al desestimar la moción de *nonsuit* y dictar sentencia contra el acusado.

Por lo expuesto, *procede declarar sin lugar el recurso y confirmar la sentencia apelada.*